Craig B. Sanders, Esq. (Cal Bar 284397)
csanders@sanderslaw.group
**SANDERS LAW GROUP**
100 Garden City Plaza, Suite 500
Garden City, NY  11530
Telephone: (516) 203-7600
Facsimile: (516) 282-7878

*Attorneys for Plaintiff and Counterclaim*
*Defendant, Carlos Vila*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VILA,<br><br>                     Plaintiff,<br><br>        vs.<br><br>DEADLY DOLL, INC.,<br><br>                     Defendant.<br>------------------------------------------------<br>DEADLY DOLL, INC.,<br><br>                     Counterclaim Plaintiff,<br><br>        vs.<br><br>CARLOS VILA,<br><br>                     Counterclaim Defendant. | Case No. 2:21-cv-05837-ODW-MRW<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS  PURSUANT TO FED. R. CIV. PRO. 12(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Otis D. Wright, II<br><br>Action Filed:       July 20, 2021<br>Discovery Cutoff:  Sept. 19, 2022<br>Pretrial Conf. Dt:  Dec. 28, 2022<br>Trial Date:         January 17, 2023<br><br>Hearing**:**    April 11, 2022<br>Time**:**       1:30 p.m.<br>Courtrom**:**   350 West 1st Street<br>                 Los Angeles, CA. 90012<br>                 Courtroom 5D |

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on Monday, April 11, 2022 at 1:30 PM, or on such date and time thereafter that the Court deems appropriate, in Courtroom 5D of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff/Counterclaim-Defendant  CARLOS VILA ("Vila") hereby moves this Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for an Order granting Vila judgment on the pleadings against Counterclaim-Plaintiff DEADLY DOLL, INC. ("Deadly Doll") all counts of the Counterclaim on the grounds that the Counterclaim fails to state a cause of action or, in the alternative, that Vila's alleged use of Deadly Doll's work is protected by the "fair use" doctrine, together with such other and further relief as this Court deems just, appropriate, and proper.

This Motion is based on this Notice of Motion and the Memorandum of Points and Authorities in Support thereof, filed concurrently herewith and all exhibits thereto, the pleadings and papers on file in this action; and upon such oral and documentary evidence as may be presented at the argument of this matter, if any.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 and Your Honor's individual practice rules. The conference of counsel took place on November 4, 2021 and Deadly Doll's position related to that conference was confirmed again in writing on March 2, 2022. Despite good faith effort by counsel, the parties were unable to reach a resolution that would eliminate the need to bring this Motion. This motion is being filed not less than seven (7) days following the conference of counsel pursuant to Local Rule 7-3**.**

//

1

2

DATED:     March 11, 2022
           Garden City, New York

3

4

**SANDERS LAW GROUP**

5

6

By:  _/s/ Craig B. Sanders_
Craig B. Sanders, Esq. (284397)
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Tel:   (516) 203-7600
Email: csanders@sanderslaw.group
*Attorneys for Plaintiff*
File No.: 121884

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

3  TABLE OF CONTENTS ..............................................................................i

4  TABLE OF AUTHORITIES..........................................................................ii

5  I.   INTRODUCTION..............................................................................1

6  II.  PROCEDURAL POSTURE ................................................................2

7  III. FACTUAL BACKGROUND ..............................................................3

8    A.  Plaintiff's Lawsuit Against Deadly Doll ....................................3

9    B.  Defendant's Counterclaim Against Plaintiff ..............................4

10 IV.  ARGUMENT ....................................................................................4

11   A.  Jurisdiction and Venue ...............................................................5

12   B.  Standard of Review ....................................................................5

13   C.  The Photograph is not a Derivative Work...................................6

14   D.  Defendant is not Entitled to a Declaratory Judgment ...............8

15   E.  Defendant's Copyright Registration is Invalid .......................12

16   F.  Plaintiff's Photograph Would be Fair Use ..............................14

17     i.   Purpose and character of use.............................................14

18     ii.  The nature of the copyrighted work .................................15

19     iii. Amount and substantiality of the portion used................16

20     iv.  Effect on the potential market for copyright holder's work..............16

21 CONCLUSION .......................................................................................18

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

3
**Cases**

4
*ABS Ent., Inc. v. CBS Corp.*,
5
    908 F.3d 405 (9th Cir. 2018) ..................................................................... 6

6
*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ..................................................................... 5
7

8
*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.,*
    386 F.Supp.2d 324 (S.D.N.Y. 2005) ...................................................... 16

9
*Bridgeman Art Library, Ltd. v. Corel Corp.,*
10
    36 F.Supp.2d 191 (S.D.N.Y.1999) ........................................................... 9

11
*Campbell v. Acuff-Rose Music, Inc.,*
12
    510 U.S. 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) ...................... 13, 14, 16

13
*Chicago Bd. of Educ. v. Substance, Inc.,*
14
    354 F.3d 624 (7th Cir. 2003) ................................................................... 16

15
*Durham Indus. v. Tomy Corp.,*
16
    630 F.2d 905 (2d Cir. 1980) ..................................................................... 8

17
*Dworkin v. Hustler Magazine, Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ................................................................. 5
18

19
*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,*
    132 F.3d 526 (9th Cir. 1997) ................................................................... 5
20

21
*Entm't Research Grp. v. Genesis Creative Grp.,*
    122 F.3d 1211 (9th Cir. 1997) ................................................................. 8

22
*Ets-Hokin v. Skyy Spirits, Inc.,*
23
    225 F.3d 1068 (9th Cir. 2000) ........................................................ passim

24
*Feist Publications, Inc. v. Rural Telephone Service Co.,*
25
    499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ..................... 8, 9

26
*Harper & Row, Publishers, Inc. v. Nation Enters.,*
27
    471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ...................... 15

28

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*,
   274 F. 932 (S.D.N.Y.1921) ...............................................................11

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2015) ...........................................................13

*Mannion v. Coors Brewing Co.*,
   377 F.Supp.2d 444 (S.D.N.Y. 2005) ...................................................9

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) .............................................13, 14, 15

*Perfect 10, Inc. v. Amazon.com, Inc*.
   508 F.3d 1146 (9th Cir. 2007) .............................................................3

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992) .............................................................10

*Schrock v. Learning Curve Int'l, Inc.*,
   586 F.3d 513 (7th Cir. 2009) ............................................................10

*Stanley v. Trustees of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ............................................................5

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir.  2012) ...........................................................8


**Statutes**

17 U.S.C.
   § 101 .................................................................................................5, 6

28 U.S.C.
   § 1331 ..................................................................................................5

Fed. R. Civ. P.
   Rule 12(b)(6) ......................................................................................5
   Rule 12(c) ............................................................................................5

Fine Arts Copyright Act 1862
   § 1 .......................................................................................................8

**Other Authorities**

1 NIMMER § 2.08[E][1] ............................................................9

1 NIMMER §§ 2.01[A], [B] (1990) ........................................9

*Henry Holmes Smith*, *Photography In Our Time*, in KALAMAZOO ART
   CTR., THREE PHOTOGRAPHERS (catalog of exhibition) (Feb.1961) ..........6

*Keith Lupton*, *Photographs and the Concept of Originality in Copyright
   Law*, 10(9) EUR. INTELL. PROP. REV. 257, 257 & n.7 (1988) ....................8

*W. Eugene Smith*, Photographic Journalism, PHOTO NOTES, June 1948............9

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

## I.  __INTRODUCTION__

Plaintiff/Counterclaim-Defendant, Carlos Vila ("*Plaintiff*"), hereby submits the instant Memorandum of Points and Authorities in support of his motion for judgment on the pleadings, which seeks to dismiss the counterclaim (the "*Counterclaim*") filed by Defendant/Counterclaim-Plaintiff Deadly Doll, Inc. ("*Defendant*" or "*Deadly Doll*").  *Dkt. No.* 15.

Defendant's counterclaim is based on the contention that Plaintiff photographed world-renowned model Irina Shayk in public, while she was wearing a pair of pants sold by Defendant, which features a design on one lower leg and for which Defendant claims to own a copyright.  According to Defendant, this purportedly makes the photograph a "derivative work," because it features Ms. Shayk wearing pants sold by Defendant.  The Coutnerclaim further asks this Court to find that Plaintiff's copyright in the photograph of Ms. Shayk is invalid, on the grounds that Plaintiff did not identify the photograph as being a derivative work when he applied for registration of same.

While there is some question as to whether Defendant's copyright is valid (Plaintiff has offered an argument regarding that issue as well as asserting that his photograph of Ms. Shayk would be protected by the fair use doctrine), the Court need not resolve either issue to determine that there are simply no set of facts or circumstances upon which Defendant could prevail on the Counterclaim.  More specifically, taken to its logical extension, Defendant's claims as pled in the Counterclaim would stand for the premise that no photographer could ever take a picture of any individual wearing any item of apparel or accessories, without obtaining licenses or waivers from any and all rightsholders in such apparel or accessories, lest the photographer run the risk of violating copyright as being a "derivative work."

While this argument is creative, it is nothing short of risible, to the extent

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

that it would result in the demise of photography as an art form.   Defendant's argument and interpretation is contrary to well-accepted tenets of copyright which have protected the rights of photograph authors dating back to the time of the Civil War.[1]   By way of extension, if Defendant's Coounterclaim were sustained, it would potentially open the floodgates for manufacturers of cell phones, such as Apple and Samsung to be held secondarily liable for copyright infringement by having provided the devices through which such pictures could be taken.   This would clearly be a bizarre and/or absurd result, and one not contemplated by the Copyright Act.

In light of the foregoing, the Court should find that there are no circumstances under which Defendant's fanciful interpretation could be accepted and, by extension, that Plaintiff is entitled to judgment on the pleadings against the Counterclaim.

## II.   <u>PROCEDURAL POSTURE</u>

Plaintiff commenced this action upon the filing of a Complaint with this Court on July 20, 2021, alleging a claim for copyright infringement under 17 U.S.C. § 501, *et seq.   Dkt. No.* 1, *et seq.*   Defendant was served with process on July 22, 2021, and proof of such service was filed with the Court on July 27, 2021.   *Dkt. No.* 11.   Defendant filed its Answer to the Complaint on September 3, 2021.   *Dkt. No.* 14.   Thereafter, Defendant filed the Counterclaim against Plaintiff.   *Dkt. No.* 15.   Plaintiff filed an Answer to the Counterclaim on October 22, 2021.   *Dkt. No.* 23.   A status conference was held before Magistrate Judge Wilner on November 17, 2021.

---

[1]   President Abraham Lincoln signed into law a statute that made "photographs and the negatives thereof" copyrightable.3 Act of March 3, 1865, 13 Stat. 540. The impetus for this act was likely due in part to the "prominent role [of photos] in bringing the horrors of the Civil War to the public." 1 WILLIAM PATRY, COPYRIGHT LAW & PRACTICE 244 (1996).

III.   **FACTUAL BACKGROUND**

   A. **Plaintiff's Lawsuit Against Deadly Doll**

Plaintiff is a professional photographer by trade who is the legal and rightful owner of photographs which he licenses to online and print publications. *Dkt. No.* 1 at ¶ 10.

Defendant is a California corporation with its principal place of business in in Los Angeles County, California. *Dkt. No.* 15 at ¶ 4. Defendant is a manufacturer and seller of clothing which, according to Defendant, has developed a following among at least a small group of celebrities. *Id.* Defendant maintains an Instagram account, which it uses to promote its clothing and other "merch" [sic.] (the "*Account*").[2]

On or about February 7, 2020, Plaintiff authored a photograph of Russian model Irina Shayk, taken while Ms. Shayk was walking across a public street (the "*Photograph*"). *Dkt. No.* 1 at ¶ 18; *Dkt. No.* 1-1. Plaintiff applied to the USCO to register the Photograph on March 30, 2020 under Application No. 1-8687856921. *Id.* at ¶ 19. The Photograph was registered by USCO on March 30, 2020 under Registration No. VA 2-201-931. *Id.* at ¶ 20.

Without permission or authorization from Plaintiff, Defendant volitionally selected, copied, stored and displayed Plaintiff's copyright protected Photograph on its Instagram Account (the "*Account*"). On or about February 10, 2020, Plaintiff observed the Photograph on Defendant's Account in a social media story and post, which was dated February 8, 2020. *Id.* at ¶ 21. The Photograph was displayed at URL: https://www.instagram.com/p/B8UfsINnDaH/. *Id.* at ¶ 22; *Dkt. No.* 1-2.

The Photograph was copied, stored and displayed by Defendant without license or permission from Plaintiff, thereby infringing on Plaintiff's copyright(s) (hereinafter the "*Infringement*"). *Dkt. No.* 1 at ¶ 24. The Infringement includes a

---

[2]   *See* @deadlydoll.

uniform resource locator ("URL") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than transitory duration and, therefore, constitutes a specific infringement. *Id.* at ¶25; 17 U.S.C. §106(5); *Perfect 10, Inc. v. Amazon.com, Inc*. 508 F.3d 1146, 1160 (9th Cir. 2007). *Id.* at ¶ 25.

The Photograph was willfully and volitionally posted to the Account by Defendant. *Id.* at ¶ 28. On information and belief, Defendant engaged in the Infringement knowingly and in violation of applicable United States Copyright Laws. *Id.* at ¶ 30. Defendant has the legal right and ability to control and limit the infringing activities on its Account and exercised and/or had the right and ability to exercise such right. *Id.* at ¶ 31. On information and belief, Defendant received a financial benefit directly attributable to the Infringement and/or from increased traffic to the Account. *Id.* at ¶¶ 33-34.

### B. <u>Defendant's Counterclaim Against Plaintiff</u>

After Defendant filed its Answer, it filed a counterclaim against Plaintiff. *Dkt. No.* 15. The counterclaim is based on Defendant's observation that, in the Photograph, Ms. Shayk is wearing a pair of pants manufactured and sold by Defendant, which depicts a partial view of Defendant's "pin-up girl" image. *Id.* at ¶¶ 7-9. Defendant avers that it owns a copyright in the "pin-up girl" image. *Id.* at ¶ 7. Therefore, according to Defendant, the Photograph is a "derivative work" to which Defendant purportedly owns the rights. As a result, Defendant's Counterclaim seeks to cancel Plaintiff's copyright registration with respect to the Photograph and accuses *Plaintiff* of being the infringing party.

### IV. <u>ARGUMENT</u>

Plaintiff's motion for judgment on the pleadings should be granted insofar as the Court should not find the Photograph to be a derivative work; regardless of the fact that Ms. Shayk was wearing a pair of pants sold by Defendant at the time

she was photographed by Plaintiff.   The reason for this is at least threefold.   <u>First</u>, Courts both within and without this Circuit have found that photographs almost invariably are composed of unique elements which give them sufficient originality of authorship so as to give rise to copyright protection, even if the resulting image is a composition of other rights-protected works.   <u>Second</u>, the image in which Defendant claims to own a copyright is *de minimis* with respect to the composition and subject matter of the Photograph, so as to not render it susceptible to being considered a derivative work.   <u>Third</u>, if Defendant's argument were to be adopted by this Court, it would necessarily result in a determination that nearly any photograph, as long as the person being photographed was wearing clothing that s/he did not design and manufacture herself, would potentially infringe upon someone's copyright unless the photograph author obtained licenses or waivers from any and all clothing or accessory manufacturers, before posting or otherwise sharing the picture.   This would result in a bizarre and idiosyncratic interpretation of copyright law wherein, for example, the individual who is wearing the clothing would not be allowed to take a photograph of themself in the clothing without getting permission from the manufacturer

For all these reasons, as well as those set forth herein, the instant motion should be granted in its entirety.

### A. <u>Jurisdiction and Venue</u>

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, insofar as the claims and counterclaims arise under the Copyright Act.   17 U.S.C. § 101, *et seq.*

### B. <u>Standard of Review</u>

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed—but early enough not to delay trial."   Fed. R. Civ. P. 12(c).   "Judgment on the pleadings is proper when, taking all

allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ*., 433 F.3d 1129, 1133 (9th Cir. 2006). In this regard, it must appear beyond doubt that the claiming party can prove no set of facts that would entitle it to relief. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co*., 132 F.3d 526, 529 (9th Cir. 1997). To this end, a motion for judgment on the pleadings is often treated as being "functionally identical" to a motion to dismiss. Therefore, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, dismissal is appropriate if—as here—the pleading fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. See *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## C. <u>The Photograph is not a Derivative Work</u>

The gravamen of Defendant's counterclaim rests on the contention that Plaintiff's Photograph is purportedly an unauthorized derivative work, because Ms. Shayk was wearing a pair of pants which featured Defendant's "Pin-up Doll" image, at the time Plaintiff photographed her. Defendant's argument is creative (or perhaps novel), but it must fail, insofar as to adopt such reasoning would have a chilling effect on the art of photography, if such art form could even survive the finding that Defendant asks this Court to issue.

"A 'derivative work' is defined in the Copyright Act as a work 'based upon one or more preexisting works' that 'recast[s], transform[s], or adapt[s]' a preexisting work and 'consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship'." *ABS Ent., Inc. v. CBS Corp*., 908 F.3d 405, 414 (9th Cir. 2018) (quoting 17 U.S.C. § 101).

The Ninth Circuit cautioned against applying the rules pertaining to

1 derivative works too narrowly with respect to photographs.  That is because the

2 Circuit observed that "[i]n a colloquial sense, of course, a photograph is derived

3 from the object that is its subject matter." *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d

4 1068, 1078 (9th Cir. 2000).  Continuing, the Court noted that "one teacher of

5 photography wrote of a photo as being an image "derived from ... the object

6 pictured." *Id.* (quoting *Henry Holmes Smith*, *Photography In Our Time*, in

7 KALAMAZOO ART CTR., THREE PHOTOGRAPHERS (catalog of exhibition)

8 (Feb.1961), reprinted in PHOTOGRAPHERS ON PHOTOGRAPHY, supra, at 99,

9 102.  Critically, however, the Court noted, however, that "simply because

10 photographs are in this colloquial sense 'derived' from their subject matter, it does

11 not necessarily follow that they are derivative works under copyright law." *Id.*

12     The import of the Ninth Circuit's discussion and observations in this regard

13 cannot be understated.  That is because a photograph will almost invariably result

14 in an image which features one or more products or items to which others own a

15 copyright; whether it is an item of clothing, other artwork, or any other material

16 capable of an attaining copyright protection.  If Defendant's argument were to be

17 accepted, it would necessarily result in a determination that a photographer could

18 not register, protect or sell any images without first obtaining permission from any

19 and all rightsholders who have any portion of an image featured in a photograph.

20 This would invite an overly restrictive and an unworkable result.

21     In this case, the Court should find that the Photograph is not a derivative

22 work, insofar as it is not "based on" a pre-existing work.  While Defendant's "Pin-

23 up Doll" image is partially observable on one portion of one leg of the pants Ms.

24 Shayk is wearing, it is completely incidental to the Photograph.  Indeed, the

25 Photograph is intended to feature a world-renowned model walking in a public

26 street.  Ms. Shayk's choice of clothing has no bearing on the public's fascination

27 with celebrity culture.  As the *Ets-Hokin* Court held, "simply because photographs

28

Case: 2:21-cv-05837-ODW-MRW       7

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

are in this colloquial sense 'derived' from their subject matter, it does not necessarily follow that they are derivative works under copyright law."

The Court should find the Ninth Circuit's reasoning to be persuasive here, if not controlling, and find that the Photograph is not an infringing derivative work; regardless of the fact that Defendant's design appears in a *de minimis* relationship to the overall Photograph. To hold otherwise would operate to impose an unprecedented deterrent to the art of photography.

### D. Defendant is not Entitled to a Declaratory Judgment

In addition to its claim for infringement, Defendant seeks a declaration holding that Plaintiff's Photograph does not qualify for copyright protection and that Plaintiff's registration thereof should be canceled. Defendant cannot possibly prevail on its declaratory judgment claim because the Photograph is sufficiently original so as to warrant copyright protection in its own right. Indeed, as will be discussed more fully *infra,* the threshold for originality in the realm of photography is extremely low.

The Ninth Circuit has adopted the Second Circuit's test for ascertaining whether a derivative work meets copyright law's fundamental requirement of originality. In order to be copyrightable, (1) "the original aspects of a derivative work must be more than trivial" and (2) "the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material." *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) (quoting *Entm't Research Grp. v. Genesis Creative Grp.*, 122 F.3d 1211, 1220 (9th Cir. 1997) (quoting *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980))).

The Durham test establishes two ways of asking the same underlying question: whether the allegedly derivative work meets the "constitutional

requirement" of originality enunciated in *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 346, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). In *Feist*, the Supreme Court held that "[t]o qualify for copyright protection, a work must be original to the author," meaning that "the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id*. at 345, 111 S.Ct. 1282. Thus, the first prong of the *Durham* test asks whether the derivative work is original to the author and non-trivial, i.e., possesses the minimal degree of independent creativity required by *Feist*. *Durham*, 630 F.2d at 909; *Entm't Research Grp*., 122 F.3d at 1220.

Applying the foregoing analysis to the case-at-bar, the Ninth Circuit held that "[c]ourts as well as photographers have recognized the artistic nature of photography. Indeed, the idea that photography is art deserving protection reflects a longstanding view of Anglo–American law. Under English law, photographs first received statutory copyright protection under an 1862 law that granted the author of 'every original painting, drawing and photograph ... the sole and exclusive right of copying, engraving, reproducing and multiplying ... such photograph, and the negative thereof.'" *Ets-Hokin*, 225 F.3d at 74 (citing *Keith Lupton*, *Photographs and the Concept of Originality in Copyright Law*, 10(9) EUR. INTELL. PROP. REV. 257, 257 & n.7 (1988) (quoting the Fine Arts Copyright Act 1862 § 1).

Continuing, the Court found it to be "well recognized that photography is a form of artistic expression, requiring numerous artistic judgments." As one photojournalist wrote,

> "[u]p to and including the instant of exposure, the photographer is working in an undeniably subjective way. By his choice of technical approach (which is a tool of emotional control), by his selection of the subject matter to be held within the confines of his negative area, and by his decision as to the exact, climatic

> [sic] instant of exposure, he is blending the variables of
> interpretation into an emotional whole which will be a basis for
> the formation of opinions by the viewing public."

*Ets-Hokin*, 225 F.3d at 1073–74 (quoting W. Eugene Smith, Photographic Journalism, PHOTO NOTES, June 1948, at 4, reprinted in PHOTOGRAPHERS ON PHOTOGRAPHY 103, 104 (Nathan Lyons *1074 ed., 1966)).

 "Original" in the copyright context "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc.*, 499 U.S. at 345 (citing 1 NIMMER §§ 2.01[A], [B] (1990)). "Almost any photograph 'may claim the necessary originality to support a copyright.'" *Mannion v. Coors Brewing Co*., 377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) (citing 1 NIMMER § 2.08[E][1], at 2-129; *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F.Supp.2d 191, 196 (S.D.N.Y.1999)). Indeed, "[e]ven the slightest artistic touch will meet the originality test for a photograph." *Ets–Hokin.*, 225 F.3d 1074-76 (9th Cir. 2000).

 Elsewhere stated, "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (citations omitted). "[I]n many cases, the photographer does not invent the scene or create the subject matter depicted in it. Rather, the original expression he contributes lies in the rendition of the subject matter - that is, the effect created by the combination of his choices of perspective, angle, lighting, shading, focus, lens, and so on." *Schrock v. Learning Curve Int'l, Inc*., 586 F.3d 513, 519 (7th Cir. 2009). "Unless a photograph replicates another work with total or near-total fidelity, it will be at least somewhat original in the rendition." *Mannion*, 377 F.Supp.2d at 452. This is based on the fact that

1
2
3
4
5
6
7
8
9
10
11
12
13
14

"[b]y varying the position of his camera, his camera angle, or the focal length of his lens, the photographer can achieve an infinite number of varied compositions with a single, stationary subject. By changing the light on the subject, or by using a color filter, any or all of the values in the subject can be altered. By varying the length of exposure, the kind of emulsion, the method of developing, the photographer can vary the registering of relative values in the negative. And the relative values as registered in the negative can be further modified by allowing more or less light to affect certain parts of the image in printing. Thus, within the limits of his medium, without resorting to any method of control that is not photographic (i.e., of an optical or chemical nature), the photographer can depart from literal recording to whatever extent he chooses." *Id.*

15  In this case, the Photograph is of world-renowned model, Irina Shayk.
16  Plaintiff chose the angle at which to photograph her; Plaintiff waited until he had
17  the appropriate background; Plaintiff chose to feature Ms. Shayk prominently in
18  the picture, without other individuals in her immediate proximity.  He chose to take
19  the photograph at a time when there were no extraneous materials cluttering the
20  image.  Plaintiff chose the lens, focal length, shutter speed, I.S.O., lighting and F-
21  stop to use, to capture the image in a manner so as to reflect his own artistic
22  expression.

23  "When this articulation of the minimal threshold for copyright protection is
24  combined with the minimal standard of originality required for photographic
25  works, the result is that even the slightest artistic touch will meet the originality test
26  for a photograph." *Ets-Hokin*, 225 F.3d at 1076.  "In assessing the 'creative spark'
27  of a photograph, we are reminded of Judge Learned Hand's comment that "no

28

Case: 2:21-cv-05837-ODW-MRW                    11

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

photograph, however simple, can be unaffected by the personal influence of the author." *Id.* citing *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y.1921).

This approach, according to a leading treatise in the copyright area, "has become the prevailing view," and as a result, "almost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." *Id.*

Given the extremely low threshold for originality when seeking to register a photograph for copyright protection, it is clear that the Photograph meets this standard.  Stated otherwise, there are no circumstances under which Defendant could succeed in canceling Plaintiff's registration of the Photograph.  In light of the foregoing, even if the Photograph could be found to be a derivative work, which it should not be, there would be no infringement on the part of Plaintiff.

### E. Defendant's Copyright Registration is Invalid

Paragraph 7 of the Counterclaim states:

> "Among the graphic images DD utilizes on its clothing is a cartoon-style image of a "Pin-up" girl holding a skull in her left hand. The artwork which includes that "Pin-up" girl image was created for DD on or about August 4, 2018, was first published by DD on or about August 6, 2019, and first appeared on  D's clothing during late 2019 as part of DD's 2020 fashion season. That artwork has been registered for copyright by DD with the U.S. Copyright Office, and has been assigned Copyright Registration No. VA0002263282.

[Dkt No. 15 at ¶7].

According to the United States Copyright Office public catalog, a screen grab of which is pictured below, the work was created in 2020, had a date of first publication of April 27, 2021, and was registered on August 10, 2021. As the Court can readily see, either the dates in the Counterclaim as alleged are incorrect or the dates provided to the United States Copyright Office are incorrect.



On November 4, 2021, Plaintiff alerted Defendant as to the fact that the dates of creation and registration as set forth in in the Counterclaim did not match those set forth in the application for registration, however, despite having advised Defendant of same, Defendant elected not to amend the Counterclaim and the time to do so expired on February 7, 2022. [Dkt No. 25].

Plaintiff believes that the above-noted error with respect to the dates invalidates Defendant's registration since the Complaint averments are substantially different that the information provided to the United States Copyright Office. Because Defendant has declined to reconcile these plain inconsistencies, the Court must conclude that either Defendant made a misrepresentation to this Court or otherwise made a misrepresentation to the USCO. For purposes of this

1   motion, it does not matter which body Defendant intended to deceive.  All that

2   matters is that the conflicting statements cannot be reconciled.  As such, the

3   Counterclaim is premised upon void (or cancellable) registration and should

4   therefore be dismissed.

5   ### F.  **Plaintiff's Photograph Would be Fair Use**

6   Although Plaintiff verily believes that the Court need consider this portion

7   of the argument to determine that the Counterclaim fails as a matter of law, in the

8   alternative, Plaintiff argues that its usage of Defendant's "Pin-Up" girl image in the

9   Photograph would not be an infringement under the fair use doctrine.

10   In determining whether a use is fair, the following, non-exhaustive, list of

11   factors, set forth in 17 U.S.C. § 107, are to be considered: (1) The purpose and

12   character of the use; (2) The nature of the copyrighted work; (3) The amount and

13   substantiality of the work used; and (4) The effect of the use on the copyright

14   holder's potential market for the work. *Lenz v. Universal Music Corp.,* 815 F.3d

15   1145, 1151-1152 (9th Cir. 2015); *Monge v. Maya Magazines, Inc.,* 688 F.3d 1164,

16   1171 (9th Cir. 2012). While no one factor is dispositive, the most weight will be

17   given to the first and fourth factors. *Monge*, 688 F.3d at 1171.

18   ### i.  **Purpose and character of use**

19   The question here is whether Plaintiff transformed the Pin-Up girl in the

20   creation of the Photograph by "add[ing] something new, with a further purpose or

21   different character." See *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 579, 114

22   S.Ct. 1164, 127 L.Ed.2d 500 (1994).  Here, the answer to that simple question can

23   be unequivocally answered in the affirmative be merely observing the two subject

24   works in a side by side comparison:

25

26

27

28

Deadly Doll Pin-Up Girl Image          Plaintiff's Photograph

 

As the Court can readily see, Plaintiff's photograph has "added" innumerable elements, well-beyond the cartoon image in which Defendant claims a (spurious) right; including but not limited to: Russian model Irina Shayk, a public street, a taxi cab, buildings, etc… As such, the Photogrpah would clearly be transformative. As the *Monge* Court explained, "[t]ransformation is a judicially-created consideration that does not appear in the text of the statute." *Monge*, 688 F.3d at 1173. Although not appearing in the statute, the Supreme Court explained this test as follows:

> "The central purpose of this investigation is to see, in Justice
> Story's words, whether the new work merely 'supercede[s] the
> objects' of the original creation, or instead adds something new,
> with a further purpose or different character, altering the first
> with new expression, meaning, or message; it asks, in other
> words, whether and to what extent the new work is
> 'transformative'."

*Campbell* at 579.  This factor clearly favors the Plaintiff and a finding of fair use.

### ii.  **The nature of the copyrighted work**

In determining whether the nature of the copyrighted work itself supports fair use, the Court must consider whether the work was creative. *Monge,* 688 F.3d

PLAINTIFF'S NOTICE, MOTION and POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

at 1177. Photographs that document events are creative, because they are "aesthetic expressions" of a scene. *Monge,* 688 F.3d at 1177. Since this discussion appears at length above, it is clear that the Photograph would be considered a creative work. Accordingly, this factor also clearly favor the Plaintiff and a finding of fair use.

### iii.   Amount and substantiality of the portion used

The Court must next consider the amount and substantiality of Plaintiff's use of Defendant's image from both a quantitative and qualitative perspective. *See Monge*, 688 F.3d at 1178. The quantitative inquiry considers the actual proportion of the Pin-Up Girl image that Plaintiff used. *See Monge*, 688 F.3d at 1178. The qualitative inquiry considers whether Plaintiff used the "heart" of the Pin-Up Girl Image. *See Monge*, 688 F.3d at 1178.  Here, while Plaintiff's Photograph arguably encompasses some of the Pin-Up girl image, the Pin-Up girl constitutes only a tiny fraction of the overall composition of the Photograph.  Accordingly, this factor also clearly favors the Plaintiff and a finding of fair use.

### iv.   Effect on the potential market for copyright holder's work

The final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." *Monge*, 688 F.3d at 1180, quoting 17 U.S.C. § 107(4) (italics by Court). As the Supreme Court held in *Harper & Row*, "[t]his last factor is undoubtedly the single most important element of fair use." *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 566 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (footnote and citation omitted) (emphasis added). The fact that the focus is on the potential market for or value of the copyrighted work is critical to this inquiry, insofar as it shifts the Court's focus away from the myopic— whether this particular defendant's actions have diluted the market for this particular picture—to the broad, that is: "if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Monge*, 688 F.3d at 1180, quoting *Harper & Row*, 471 U.S. at 568; *Chicago*

*Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 627 (7th Cir. 2003) ("[t]here is no analytical difference between destroying the market for a copyrighted work by producing and selling cheap copies and destroying the subsequent years' market for a [work] ...").

In other words, the fourth fair use factor focuses on the question of usurpation. That is because "[c]opyright law serves to protect a copyright holder's ability to benefit from the market for his or her work, as well as from any markets that the copyright holder could reasonably be expected to enter." *Gossip Cop,* 196 F.Supp.3d at 409 citing *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.,* 386 F.Supp.2d 324, 331 (S.D.N.Y. 2005). "Thus, when assessing the fourth fair use factor, courts ask whether a defendant's use usurps the market for the copyright holder's work." *Id.* citing *Campbell*, 510 U.S. at 593, 114 S.Ct. 1164.

With this in mind, it is clear that the fourth fair use factor strongly favors Plaintiff. Here, there is literally no potentially cognizable impact on the market for the Pin-Up Girl image.  That is because the photograph of a model wearing a pair of Defendant's pants does not usurp the market for Defendant selling a pair of pants.  If anything, the argument would be to the contrary.  More specifically, the Photograph featuring a world-renowned model wearing Defendant's pants almost certainly would have a positive impact on Defendant's sales of its clothing.  That is precisely why Defendant elected to post the Photogrpah to its Instragram Account. The Photograph does not usurp Defendant's market for its clothing or any possible derivative usage of the Pin-Up Girl Image.  There is literally no credible arugment that can be offered to the contrary.  As such this factor, as with all of the factors, favors the Plaintiff and a finding of fair-use.

//

//

//

## CONCLUSION

For all the reasons set forth above, the Court should find that there are no circumstances upon which Defendant could prevail on the Counterclaim.  In light of the foregoing, cause exists to grant the instant motion in its entirety, together with any such other and further relief as this Court deems just, equitable, and proper.

DATED:      March 14, 2022
            Garden City, New York

**SANDERS LAW GROUP**

By:  */s/ Craig B. Sanders*
Craig B. Sanders, Esq. (Cal Bar 284397)
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Tel:    (516) 203-7600
Email: csanders@sanderslaw.group
*Attorneys for Plaintiff*
File No.: 121884