Craig B. Sanders, Esq. (Cal Bar 284397)
csanders@sanderslaw.group
**SANDERS LAW GROUP**
100 Garden City Plaza, Suite 500
Garden City, NY  11530
Telephone: (516) 203-7600
Facsimile: (516) 282-7878

*Attorneys for Plaintiff and Counterclaim Defendant, Carlos Vila*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VILA, <br><br>             Plaintiff, <br><br>    vs. <br><br> DEADLY DOLL, INC., <br><br>             Defendant. <br> ---------------------------------------------- <br> DEADLY DOLL, INC., <br><br>             Counterclaim Plaintiff, <br><br>    vs. <br><br> CARLOS VILA, <br><br>             Counterclaim Defendant. | Case No. 2:21-cv-05837-ODW-MRW <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(C)** <br><br> Judge: Hon. Otis D. Wright, II <br><br> Action Filed:      July 20, 2021 <br> Discovery Cutoff: Sept. 19, 2022 <br> Pretrial Conf. Dt: Dec. 28, 2022 <br> Trial Date:         January 17, 2023 <br><br> Hearing**:**   April 11, 2022 <br> Time**:**        1:30 p.m. <br> Courtroom**:**  350 West 1st Street <br>                     Los Angeles, CA. 90012 <br>                     Courtroom 5D |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

    A.    Introduction ................................................................................... 1

    B.    Defendant is not Entitled to a Declaratory Judgment ............................. 2

    C.    The Photograph is not a Derivative Work .......................................... 2

    D.    Defendant's Copyright Registration is Invalid .................................... 6

    E.    Plaintiff's Photograph Would be Fair Use .......................................... 9

        i.    Purpose and character of use ................................................... 11

        ii.    The nature of the copyrighted work ........................................ 11

        iii.    Amount and substantiality of the portion used ....................... 12

        iv.    Effect on the potential market for copyright holder's work ... 12

CONCLUSION ....................................................................................................... 12

Case: 2:21-cv-05837-ODW-MRW          i

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

# TABLE OF AUTHORITIES

**Cases**

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) ................................... 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ............................................................................ 7

*Gaylord v. U.S.*,
  777 F.3d 1363 (Fed. Cir. 2015) .......................................................................... 3

*Glee v. Austian*,
  No. CIVS061658LKKGGHP, 2008 WL 283843 (E.D. Cal. Feb. 1, 2008),
  report and recommendation adopted, No. S-06-1658LKKGGHP, 2008 WL
  1834721 (E.D. Cal. Apr. 23, 2008) .................................................................... 3

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
  925 F.3d 1140 (9th Cir. 2019) ............................................................................ 9

*Google, LLC v. Oracle America, Inc.*,
  141 S.Ct. 1183 (2021) ....................................................................................... 12

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ............................................................................ 12

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*,
  55 F. Supp. 2d 1113 (D. Nev. 1999) .................................................................. 6

*U.S. Bank v. Village at Lakeridge*,
  138 S.Ct. 960, 967 (2018) ................................................................................. 13

*Unicolors, Inc v. H&M Hennes & Mauritz*,
  142 S.Ct. 941 (2022) ......................................................................................... 10

*United Feature Syndicate, Inc. v. Koons*,
  817 F. Supp. 370 (S.D.N.Y. 1993) ..................................................................... 5

*United States v. AMC Ent., Inc.*,
  549 F.3d 760 (9th Cir. 2008) .............................................................................. 4

### A. Introduction

Defendant's opposition is wholly unavailing and fails to show why Plaintiff is not entitled to judgment on the pleadings with respect to Defendant's counterclaims. By way of just one example of this conduct, the case law on which Defendant relies to support its contention that Plaintiff's Photograph is purportedly a derivative work is either readily distinguishable, out-of-Circuit, or both.[1]

Further to this point, nowhere in Defendant's papers does it address the fundamental question of how the proffered interpretation of copyright law vis-à-vis derivative works would not lead to the total demise of photography as a centuries-old and well recognized art form.  Indeed, as was set forth at length in Plaintiff's moving brief, both scholars and Courts within and without this Circuit have recognized that nearly any photograph is necessarily "derived from" the images it captures, but that does not equate to a finding that a photograph is a derivative work.  To accept Defendant's argument would be contrary to well-settled precedent and would necessarily result in a determination that *all* photographs must *always* be found to be derivative works.  As has been argued, this would lead to an absurd result, which is starkly contrary to all existing precedent.

More importantly, it is relevant to note that Defendant has failed to oppose the portion of Plaintiff's motion which seeks judgment on the pleadings as to Defendant's first claim for relief, which seeks a declaration holding that Plaintiff's Photograph does not qualify for copyright protection and that Plaintiff's registration thereof should be canceled.  Because this prayer for relief is unopposed,

---

[1] Parenthetically, this may be why Defendant dedicates nearly half of the introductory page of its Opposition to a single-spaced footnote identifying "about 20 other cases" which Plaintiff has filed against other infringers over "the last several years," which cases were settled.  Defendant fails to state the manner in which it believes the claims in those actions have any bearing on the case-at-bar, and only serve to illustrate the lengths to which Defendant will go to distract the Court from the arguments before it.

the Court should find that Defendant has waived any argument in opposition and that Plaintiff is entitled to judgment on Defendant's first counterclaim as a matter of law.

### B. Defendant is not Entitled to a Declaratory Judgment

Defendant failed to oppose the portion of Plaintiff's argument which asserts that Defendant is not entitled to a Declaratory Judgment on its first counterclaim, which seeks a declaration, *inter alia,* that: (a) the Photograph is an unauthorized derivative work; (b) the Photograph does not qualify for copyright protection; (c) Defendant is not liable to Plaintiff for copyright infringement; and (d) Plaintiff is liable to Defendant for copyright infringement.

Defendant's failure to oppose this prong of Plaintiff's motion should be found to be fatal and result in a determination that Defendant has waived its rights to oppose same and finding that Plaintiff is entitled to judgment on the pleadings as to Defendant's declaratory judgment claim. *See, e.g., Glee v. Austian*, No. CIVS061658LKKGGHP, 2008 WL 283843 (E.D. Cal. Feb. 1, 2008), report and recommendation adopted, No. S-06-1658LKKGGHP, 2008 WL 1834721 (E.D. Cal. Apr. 23, 2008) ("Failure of the responding party to file written opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion ....").

### C. The Photograph is not a Derivative Work

In the event that the Court does not find Defendant's failure, refusal or inability to respond to the portion of Plaintiff's motion which seeks a determination that Defendant is not entitled to a declaratory judgment as a matter of law to be dispositive, it should nonetheless find the remainder of Defendant's arguments to be unavailing. More specifically, the Court should find that Plaintiff's Photograph is not a "derivative work" as a matter of law and that the Photograph does not infringe any copyright Defendant asserts to hold.

As was set forth in Plaintiff's moving brief, Defendant erroneously submits that Plaintiff's photograph is a derivative work, yet Defendant's opposition fails to put forth any fact or binding authority to substantiate its faulty premise. Indeed, the case law cited by Defendant clearly supports Plaintiff's position, rather than that of Defendant.

First, Defendant cites to *Gaylord v. U.S.*, 777 F.3d 1363 (Fed. Cir. 2015) in support of its contention that Plaintiff's Photograph is an unauthorized derivative work. Defendant's reliance on *Gaylord* is misplaced for a variety of reasons, not the least of which is that "a federal court of appeal's decision is only binding within its circuit." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 772 (9th Cir. 2008).

Even if the decision in *Gaylord* were binding—it is not—*Gaylord* remains readily distinguishable. More specifically, in *Gaylord* the plaintiff (a World War II veteran) was commissioned to create a sculpture to form a central part of the Korean War Veterans Memorial located on the National Mall in Washington, D.C. Gaylord did create such a sculpture, consisting of nineteen (19) stainless steel statues depicting a squad of soldiers on patrol in the Korean War. The sculpture(s) became known as "The Column." An amateur photographer later took a picture of The Column, which the United States Postal Service (the "USPS") then sought to use on a postage stamp, which it did. Once in use, Gaylord filed the aforementioned lawsuit alleging that the USPS infringed upon his copyright when it issued postage stamp depicting The Column. The Court had no trouble finding the postage stamp to be a derivative work, to the extent that the image was nothing more than a photograph of Gaylord's original sculpture. Nothing was added and nothing removed. That is in stark contrast to the facts of the case-at-bar, wherein the focal point of Plaintiff's Photograph is Irina Shayk, and the fact that Ms. Shayk is alleged to be wearing an item of clothing marketed and sold by Defendant is of no import to the overall Photograph.

Defendant next relies on a decision from the Southern District of New York in *United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370, 382 (S.D.N.Y. 1993) ("*Koons*"), which suffers deficiencies in addition to those noted above with respect to *Gaylord*. More specifically, Defendant cites *Koons* for the premise that "[i]ncluding some or all of a separate copyrighted work in or as an element of a subsequent work can make the subsequent work a derivative of the underlying work under that definition." *Dkt. No.* 32 at p. 5. Setting aside that Defendant's argument is overly generic, the facts in *Koons* are readily distinguishable. Specifically, in *Koons,* the artist expressly stated that his sculpture was intended to depict the canine character of "Odie" from the Garfield® comic strip, and that the "Odie" character was featured prominently in the sculpture (which, interestingly, Koons himself did not create—it was commissioned to a sculptor with specific instruction).

Here, in contrast to *Koons*, Plaintiff did not direct Ms. Shayk to wear any item of clothing featuring the "Pin Up Girl" image in which Defendant claims to have a copyright at the time Ms. Shayk was photographed. Plaintiff did not specifically wait to photograph Ms. Shayk until such time that she was wearing an item of clothing featuring the "Pin Up Girl" image in which Defendant claims to have a copyright. Moreover, the items of clothing which Ms. Shayk was wearing are immaterial and *de minimis* in relation to the Photograph as a whole. In sum, the facts in *Koons* are readily distinguishable from those in the case-at-bar.

Defendant also relies on the decision in *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc*., 55 F. Supp. 2d 1113 (D. Nev. 1999), which again fails to be relevant in that, just like the above cases, this case discusses infringements and derivative works where the intent of the infringer was to copy the copyrighted work(s). This pattern of factual irrelevance is found in every case upon which Defendant relies, in that every case cited deals with a situation in which the infringer's announced

Case: 2:21-cv-05837-ODW-MRW     4

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S COUNTERCLAIM

and/or actual intent was to create a copy of the copyrighted work. While Defendant's attempt to create a question of fact is creative, it is unavailing, insofar as it cannot be disputed that Plaintiff's intent was to photograph Ms. Shayk, without regard to any item of clothing she may have happened to be wearing. Further to this point, unlike all of the "authority" cited by Defendant, it is beyond cavil that Plaintiff herein did not utilize his camera in his effort to duplicate the Defendant's underlying work; nor did Plaintiff even feature the Defendant's work in the composition. As such, it can.

Since none of the above cases are binding precedent and absolutely none bear situational resemblance to the instant matter, they should be wholly ignored. What is left thereafter is the unavoidable conclusion that Defendant has categorically failed to provide precedent, binding or otherwise, that would suggest, much less label, Plaintiff's photograph a derivative work.

Defendant's attempt to argue that the decision in *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) supports its position is equally misplaced. Defendant cites *Ets-Hokin* for the premise that the photograph of a vodka bottle at issue in that case could not be considered a derivative work because the bottle itself was a utilitarian object which, itself, was not copyrightable. Upon this fact, Defendant argues that the Court should find in favor of it under *Ets-Hokin* on the grounds that its "Pin Up Doll" image <u>is</u> subject to copyright and, therefore, Plaintiff's Photograph should be considered a derivative work.

Defendant's argument is unavailing, insofar as the underlying facts of this case are readily distinguishable from those in *Ets-Hokin*. More specifically, the photograph in *Ets-Hokin* was <u>only</u> of Skyy's vodka bottle. Therefore, if the vodka bottle could have been copyright eligible itself, the Court may have decided the matter otherwise; to the extent that it did not also consider the fact that Skyy specifically commissioned Ets-Hokin to photograph its product and/or bottle.

Here, in contrast to *Ets-Hokin*, the focal point of the Photograph is Ms. Shayk. It is not Defendant's pants. It is not the jacket, hat, sunglasses or shoes Ms. Shayk is also wearing. Nor is it intended to depict the phone or other accessories Ms. Shayk is carrying.

This serves to illustrate the frivolity of Defendant's argument, if not the complexity of trying to enforce and police its position. According to Defendant, Plaintiff would have needed to identify his photograph of Ms. Shayk as being a derivative work of the seller of Ms. Shayk's shoes, coat, hat, sunglasses, phone and accessories—in addition to Defendant's pants—and would have needed to obtain licenses from each and all of such entities before he could register or license the Photograph which he singularly authored. As was stated more fully in Plaintiff's moving brief, to accept Defendant's argument would all but put an end to the art of photography.

Based on the above it is clear that neither law nor common sense would entertain such a risible position that would instantaneously make every person who has ever taken a photograph with their camera or cell phone an infringer in the eyes of the law.

### D. Defendant's Copyright Registration is Invalid

In the next prong of its Opposition, Defendant argues that its copyright registration should not be invalidated or its counterclaim dismissed for a "typographical error." *Dkt. No.* 32 at Point IV. Defendant advances this argument despite its admission that it did not seek to register the "Pin Up girl" image until after this action was filed and, even then, for the sole purpose of interposing the instant counterclaim. Defendant further admits that the dates of creation and first publication as set forth in its counterclaim are different than that set forth in the registration, but, has failed to offer the Court any plausible explanation as to why the purported error occurred.

Despite numerous requests for clarification and attempts to discuss the issue of contradicting dates, Defendant has never once admitted nor explained which dates on which document were in error.  Moreover, Defendant never once informed Plaintiff of the existence of Defendant's request to amend the registration.  Any claims of frivolity on the part of the Plaintiff would thus appear to be an artifice by Defendant to save its admittedly defective registration.

Not only does Defendant's unsupported factual missive fall short, its legal argument is equally unavailing.  More specifically, Defendant posits that "the inaccurate information was included on the application...with knowledge that it was inaccurate...".  *Dkt. No.* 32 at p. 9 (citing *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1146 (9th Cir. 2019)).  Not surprisingly, Defendant's quoting of the statute is also inaccurate. Section 411 of the Copyright Act states that "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration".  17 U.S.C. §411.  A proper reading of the statute would find that Defendant's registration fails both prongs.

Firstly, Defendant clearly knew that the information on the registration was incorrect, as it affirmatively stated that it did not seek to register its purported copyright until after it had been served with this action and for the express purpose of drafting the counterclaim.  Despite setting forth this timeline, Defendant offers no substantive explanation as to why the dates in the application for registration differ from those set forth in the counterclaim and/or which was correct.  Secondly, it is respectfully submitted that had the Register of Copyrights known that the application contained dates that were inaccurate by a factor of years, it would have certainly refused registration based upon the proffer of inaccurate information.

Once again, Defendant's discussion of the case law on this point is out of context. More specifically, Defendant cites to *Unicolors, Inc v. H&M Hennes & Mauritz*, 142 S.Ct. 941 (2022) for the premise that the Supreme Court has purportedly held that "even intentional factual misstatements in an application do not invalidate the resulting registration unless the applicant knew that it would do so when it filed the application."

Defendant's argument is misplaced, to the extent that the Supreme Court unequivocally stated that a mistake of fact or law would not entitle a copyright applicant to the safe harbor provision in section 411, if and only if the party applying for registration did not have knowledge that it was inaccurate. *Unicolors,* 142 S.Ct. at 941 (2022). In the instant matter, it is irrefutable that Defendant had knowledge of the correct dates of creation and first publication at the time of filing its application for registration, given that the counterclaim was filed within days of the application for registration, yet these near-simultaneous documents contain disparate information.

Further, the Court held that "Inaccurate information in a registration is therefore equally (or more) likely to arise from a mistake of law as a mistake of fact. That is especially true because applicants include novelists, poets, painters, designers, and others without legal training. Nothing in the statutory language suggests that Congress wanted to forgive those applicants' factual but not their (often esoteric) legal mistakes." Here, the applicant was not the uninformed artist without legal training but was the artist's learned legal counsel who is also the Defendant's counsel for this litigation. [See Dkt 32-2 wherein the organization applying is "RIMON, PC"].

Borrowing from Justice Breyer's analogy used in the *Unicolors* decision, Defendant saw a red bird in the tree, affirmatively knew that it was a scarlet tanager, but chose to call it a cardinal anyway. *Id.* at 946. Importantly, given that this

precedent is barely a month old and is a decision from the highest Court in the land, there can exist no overriding precedent that would substantiate Defendant's erroneous proposition that its registration is valid.

### E. Plaintiff's Photograph Would be Fair Use

In the final prong of its opposition, Defendant appears to contend that Plaintiff is not entitled to judgment on the pleadings to the extent that it would rely on a fair use defense, insofar as Defendant appears to contend that the Court cannot rule on a fair use defense at the pleading stage. Defendant bases this argument on the contention that a fair use defense will often implicate questions of fact that are not ripe for determination at the pleading stage. While this may be a generically valid premise, it is not as absolute as Defendant suggests.

To the contrary, courts have often considered fair use on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) ("the district court's resolution of the fair use issue at the motion to dismiss stage was proper"). Further, the Supreme Court affirmed that "the ultimate question whether [the]facts showed a 'fair use' is a legal question for judges to decide." *Google, LLC v.Oracle America, Inc*., 141 S.Ct. 1183, 1199 (2021). Where, as here, the Court must decide legal (as opposed to factual) issues, they must be decided by the Court.

The Court further explained that a reviewing court should try to break fair use questions into their separate factual and legal parts; reviewing each according to the appropriate legal standard. But when a question can be reduced no further, the Court held that "the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id*. (quoting *U.S. Bank v. Village at Lakeridge*, 138 S.Ct. 960, 967 (2018)).

Here, there are no disputed facts. More specifically, it is not disputed that Plaintiff authored the Photograph of Irina Shayk. It is not disputed that Plaintiff

registered the Photograph for copyright protection, and that such a registration was issued. It is not disputed that Ms. Shayk was wearing pants manufactured and/or sold by Defendant at the time Plaintiff photographed her. The "Pin Up Girl" image, in which Defendant claims to hold a copyright[2] is present on a portion of one leg of the pants which Ms. Shayk is wearing in the Photograph. It cannot be disputed that the "Pin Up Girl" image, in which Defendant claims to hold a copyright comprises an insignificant portion of the overall Photograph. As a result, the only questions for the Court to decide are: (i) whether the Photograph is a "derivative work" (despite the fact that the "Pin Up Girl" image featured on Ms. Shayk's pants does not match the image identified by Defendant in its counterclaim); and (ii), if so, is the Photograph protected by the fair use doctrine.

In the instant matter, the Plaintiff did not take the photograph with the intent of incorporating Defendant's alleged copyrighted work. The incorporation of the alleged copyrighted work is a function of random chance given that Plaintiff did not plan this shoot not and certainly had no input in the wardrobe selected by the model.[3]

---

[2] The Court should note that the Pin Up Girl image Defendant purports to be registered contains green elements which appear to be outlines of bats and the Pin Up Girl image on the Shayk's pants does not have the green elements. Accordingly, the registered image is **not** the same as the claimed infringement.

 

[3] Plaintiff's photo was taken with a 300mm lens at a shutter speed of 1/4,000 of one second. This is in contrast to planned street photography which is typically done at 50mm and a shutter speed of 1/200. In layman's terms, this means that Plaintiff was relatively far away from the subject and had no control over the

Defendant in opposing this point in Plaintiff's brief spent the vast majority of its time analyzing whether or not the analysis should take place and therefore spent little to no time in their brief to the actual discussion of the four factors. To that end Plaintiff will endeavor to refute the minimal challenges put forth by the Defendant without repeating the arguments put forth in his original papers.

### i. Purpose and character of use

When discussing transformative usage of the Defendant's alleged copyright, the crux of the discussion is whether something has been added to the original work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). In the instant matter this is not a difficult task given that the Plaintiff's photograph also includes, from top to bottom, buildings, trees, lampposts, a taxi cab, a model, an entire outfit, and a crosswalk on a road. To suggest that this usage is not transformative would necessitate that the Court disregard centuries of precedent and label every individual who has ever taken a 'selfie' a direct infringer. Based on the discussions it is clear that this factor is in favor of the Plaintiff.

### ii. The nature of the copyrighted work

As discussed above and at length in Plaintiff's earlier memorandum, Plaintiff's work is creative given that Plaintiff made several decisions which were factored into the creation of his copyrighted work. Plaintiff chose his shutter speed, aperture, ISO, focal length, angle of shooting, timing of shooting, exposure, contrast, hue and saturation, clarity, and sharpness along with several other parameters that were in his control to create the art that he copyrighted. Based on the discussions it is clear that this factor is also in favor of the Plaintiff.

//

---

subject necessitating a fast enough shutter speed to capture the exact moment without blurring the subject.

### iii. Amount and substantiality of the portion used

Defendant contends that because they are able to see the entirety of the Defendant's work in a small corner of the photograph that this necessitates that this factor leans in their favor. Such a conclusion would be incorrect. Defendant's work is neither the focus of the photograph nor in-focus in the photograph. The fact that the Defendant's work is in the photograph, and that they were able to use it for financial gain, was purely coincidental. Given that it is no more important to the work than the yellow cab in the background, this favor clearly leans in favor of the Plaintiff.

### iv. Effect on the potential market for copyright holder's work

Defendant has acquiesced and stated that this factor is at best neutral. However, this admission is not entirely accurate given that not only did they attempt to profit off of the Plaintiff's photo, they have never once attempted to enter into this market but rather use all of the photos to enhance their publicity. If Defendant Corporation was to actually to go after this market, they would file a case for every one of their customers that took and uploaded a photo of themselves onto social media. This sounds like a wild proposition; however, it is the exact claim that the Defendant is attempting to put forth. Given that there can be no negative effect on a market the Defendant has no intention of entering, this favor also leans in favor of the Plaintiff.

### CONCLUSION

For all the reasons set forth above, the Court should find that there are no circumstances upon which Defendant could prevail on the Counterclaim. In light of the foregoing, cause exists to grant the instant motion in its entirety, together with any such other and further relief as this Court deems just, equitable, and proper.

DATED:   March 28, 2022
         Garden City, New York

**SANDERS LAW GROUP**

By:  /s/ Craig B. Sanders
Craig B. Sanders, Esq. (Cal Bar 284397)
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Tel:   (516) 203-7600
Email: csanders@sanderslaw.group
*Attorneys for Plaintiff*