Craig B. Sanders, Esq. (Cal Bar 284397)
csanders@sanderslaw.group
**SANDERS LAW GROUP**
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Telephone: (516) 203-7600
Facsimile: (516) 282-7878

*Attorneys for Plaintiff and Counterclaim*
*Defendant, Carlos Vila*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VILA, | Case No. 2:21-cv-05837-ODW-MRW |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. PRO. 56 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| DEADLY DOLL, INC., | |
| Defendant. | |
| ---------------------------------------------- | Judge: Hon. Otis D. Wright, II |
| DEADLY DOLL, INC., | Action Filed:      July 20, 2021 |
| Counterclaim Plaintiff, | Discovery Cutoff:  Sept. 19, 2022 |
| | Pretrial Conf. Dt:  Dec. 28, 2022 |
| vs. | Trial Date:      January 17, 2023 |
| CARLOS VILA, | Hearing**:**   November 7, 2022 |
| Counterclaim Defendant. | Time**:**      1:30 p.m. |
| | Courtroom**:**  350 West 1st Street |
| | Los Angeles, CA. 90012 |
| | Courtroom 5D |

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on Monday, November 7, 2022 at 1:30 PM, or on such date and time thereafter that the Court deems appropriate, in Courtroom 5D of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff/Counterclaim-Defendant CARLOS VILA ("Vila") hereby moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting Vila summary judgment on the single Count of his Complaint for direct copyright infringement against Counterclaim-Plaintiff DEADLY DOLL, INC. ("Deadly Doll") as well as summary judgment on the two counts of Deadly Doll's Counterclaim on the grounds that Vila's photograph is not a derivative work and is not an infringement of any copyright claimed to be held by Defendant as a matter of fact or law; or, alternatively, that Vila's alleged use of Deadly Doll's work is protected by the "fair use" doctrine, together with such other and further relief as this Court deems just, appropriate, and proper.

This Motion is based on this Notice of Motion and the Memorandum of Points and Authorities in Support thereof, filed concurrently herewith and all exhibits thereto, the pleadings and papers on file in this action; and upon such oral and documentary evidence as may be presented at the argument of this matter, if any.

## STATEMENT PURSUANT TO LOCAL RULE 7-3

This motion has not been made in strict compliance with the requirements of Local Rule 7-3, that a motion not be filed until at least seven (7) days following the conference of counsel. The undersigned is aware of Your Honor's position that "Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers ... [or] a mere formalism simply there to be checked off" (*Daggs v. FCA US LLC*, No.

i

220CV03867ODWJEM, 2020 WL 5407455 (C.D. Cal. Sept. 9, 2020)), however it is respectfully submitted that the undersigned expended diligent efforts in an attempt to hold such a conference. More specifically, the undersigned sent a number of emails to Defendant's counsel to discuss not only certain deficiencies in Defendant's discovery responses that had been noticed on August 2, 2022, but also to discuss dates for the required settlement conference and the instant motion. These emails were met with no response. The undersigned further attempted to contact Defendant's counsel by telephone which similarly went without response.

Today, October 3, 2022, I was advised by email that Defendant's counsel had been unavailable at the times of my earlier calls and messages due to an illness that kept him from being in a position to respond to the messages. However, having received a response, Plaintiff contacted Defendant and held a LR 7-3 conference today. The parties discussed the basis of this motion as well as the aforenoted scheduling issues.

Insofar as this Court's scheduling Order requires such motions to be served on at least 35 days' notice and made returnable on or before the motion cutoff deadline, Plaintiff was constrained to filing this motion with the conference of counsel having occurred less than seven days before the filing of this motion. Plaintiff respectfully requests that Your Honor either excuse such requirement due to the illness and unavailability of Defendant's counsel or otherwise find that the undersigned exercised sufficient diligence so as to have substantially complied with the spirit of the Rule.

//
//
//
//
//
//
//

1

Dated: October 3, 2022

2

**SANDERS LAW GROUP**

3

By:  _/s/ Craig B. Sanders_

4

Craig B. Sanders, Esq. (Cal Bar 284397)

5

333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553

6

Tel:    (516) 203-7600

7

Email: csanders@sandersalaw.group

8

*Attorneys for Plaintiff and Counterclaim
Defendant, Carlos Vila*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................................. v

   I.      INTRODUCTION .................................................................... 1

   II.     JURISDICTION AND VENUE............................................... 2

   III.    PROCEDURAL POSTURE ..................................................... 2

   IV.    STATEMENT OF FACTS....................................................... 3

   V.     ARGUMENT ........................................................................... 6

      A. STANDARD OF REVIEW ...................................................... 7

      B. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT ................................. 8

      C. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT'S COUNTERCLAIMS ............................ 10

         1.    Plaintiff's Photograph is Protected by 17 U.S.C §113 ............... 10

         2.    Plaintiff's Photograph is Not a Derivative Work ....................... 12

         3.    Plaintiff's Photograph is Protected by the Fair Use Doctrine ................................................................................... 15

            i.      Purpose and character of use ............................................. 15

            ii.     The Nature of the Copyrighted Work ............................... 17

            iii.    Amount and substantiality of the portion used ................. 18

            iv.    Effect on the potential market for copyright holder's work ................................................................................. 18

CONCLUSION ................................................................................. 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...................................................................7

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) .....................................................................9

*Addisu v. Fred Meyer, Inc.*,
  198 F.3d 1130 (9th Cir. 2000). ..................................................................6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..........................6

*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*,
  386 F.Supp.2d 324 (S.D.N.Y. 2005) .......................................................16

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016) .....................................................16

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987) ...................................................................6

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) ..............14, 15, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)) ........................6

*Chicago Bd. of Educ. v. Substance, Inc.*,
  354 F.3d 624 (7th Cir. 2003) ...................................................................16

*Ellis v. Infinite Labs, LLC*,
  No. SACV13241JLSANX, 2014 WL 12558115 (C.D. Cal. Aug. 1, 2014) .......7

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) .....................................................10, 11, 12

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) ....................................................................................7

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*,
  905 F. Supp. 2d 1088 (C.D. Cal. 2012), aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C.*, 723 F.3d 1067 (9th Cir. 2013), and aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060 (9th Cir. 2014) ..............................8

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ........................15, 16

*Hous. Rts. Ctr. v. Sterling*,
  404 F. Supp. 2d 1179 (C.D. Cal. 2004)......................................................6

*Kennedy v. Applause, Inc.*,
   90 F.3d 1477 (9th Cir. 1996) ............................................................... 6

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2015) ........................................................... 14

*Major v. Sony Music Entertainment, Inc.*,
   No. 92-2826 PKL, 1992 WL 210115 (S.D.N.Y. August 17, 1992) ........... 12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ...................... 6

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ........................................ 7, 14, 15, 16

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, +
   213 F.Supp.2d 1146 (C.D.Cal. 2002) ............................................. 8

*Perfect10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...................................................... 7, 8

*S.O.S. Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ....................................................... 7

*Signorelli v. N. Coast Brewing Co. Inc.*,
   No. 5:18-CV-02914-EJD, 2019 WL 2569582 (N.D. Cal. June 21, 2019) .. 12, 13

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
   446 F.Supp.2d 1164 (E.D.Cal. 2006) ............................................ 8

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ...................................................... 8

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ..................................................... 6

*Zorikova v. Kineticflix, LLC*,
   No. 219CV04214ODWGJSX, 2022 WL 1266662 (C.D. Cal. Apr. 28, 2022) ... 5

**Statutes**

17 U.S.C.
   § 101 ............................................................................... 9, 12
   § 102(a) ............................................................................... 7
   § 106 ............................................................................... 7, 8
   § 107(4) .............................................................................. 15
   § 113 ................................................................................. 12

28 U.S.C.
   § 1331 ................................................................................ 2
   § 1338(a) ............................................................................. 2
   § 1391(a)(2) .......................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rules**

Fed. R. Civ. P.
    Rule 56(a) ..........................................................................................5

Local Rule
    56-1 ...................................................................................................3

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.   **INTRODUCTION**

Plaintiff/Counterclaim-Defendant Carlos Vila ("*Plaintiff*" or "*Vila*") hereby moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting him summary judgment on the single Count of his Complaint for direct copyright infringement against Counterclaim-Plaintiff Deadly Doll, Inc. ("*Defendant*" or "*Deadly Doll*") as well as summary judgment on both counts of Defendant's Counterclaim.

Plaintiff is entitled to summary judgment on his claim-in-chief for direct copyright infringement insofar as the facts show that Plaintiff is the author of the photograph at issue and has proffered a Certificate of Copyright Registration for same.  Further, the evidence adduced in discovery shows that: (i) the photograph was posted to Defendant's Instagram account; (ii) Defendant was responsible for such posting; (iii) Defendant does not have a license or other permission from Plaintiff to display the photograph; and (iv) Defendant has no documents to support its claim that it has any license or permission from anyone else to use the photograph.  Even if Defendant did purport to present any such license, it would be of no moment, insofar as the Certificate of Registration identifies Plaintiff as the sole author of the photograph.

Plaintiff is also entitled to summary judgment as to Defendant's counterclaims, insofar his photograph of model Irina Shayk cannot be considered a derivative work as a matter of fact or law.  That is because, even if Defendant does hold a valid copyright in its "Pin-Up Girl" image—a point which Plaintiff does not concede—by affixing the "Pin-Up Girl" image to useful articles of clothing that have been offered for sale or other distribution to the public, copyright law permits the making, distribution, or display of pictures or photographs of such articles. See 17 U.S.C. § 113. For the same reason, Plaintiff is entitled to summary judgment dismissing Defendant's copyright infringement counterclaim.

## II.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.  This Court has personal jurisdiction over Defendant because it maintains its principal place of business in Los Angeles County, California.

Venue is proper under 28 U.S.C. § 1391(a)(2) because Deadly Doll, Inc. does business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## III.   PROCEDURAL POSTURE

Plaintiff commenced this action upon the filing of a Complaint with this Court on July 20, 2021.  *Dkt. No.* 1, *et seq*.  The Clerk of the Court issued the requested Summons on the same date.  *Dkt. No.* 9.  Defendant was served on July 22, 2021, and proof of such service was filed with the Court on July 27, 2021.  *Dkt. No.* 11.  Pursuant to a stipulation between the parties (*Dkt. No.* 13), Defendant filed its Answer to the Complaint on September 3, 2021.  *Dkt. No.* 14.  On the same day, Defendant filed Counterclaims against Plaintiff.  *Dkt. No.* 15.  On October 7, 2021, the Court "So Ordered" a stipulation extending Plaintiff's time to respond to the Counterclaims.  *Dkt. No.* 22.

On October 22, 2021, Plaintiff filed an Answer to Defendant's Counterclaims.  *Dkt. No.* 23.  The Court then issued an Order referring this matter to ADR Procedure No. 1.  *Dkt. No.* 26.  On March 14, 2022, Plaintiff filed a Motion for Judgment on the Pleadings seeking to dismiss Defendant's counterclaims.  *Dkt. No.* 30*, et seq.*  Defendant filed Opposition to the motion on March 21, 2022 (*Dkt. No.* 32*, et seq.*) and Plaintiff filed a Reply.  *Dkt. No.* 33.  On August 23, 2022, the Court issued an Order denying Plaintiff's motion for judgment on the pleadings. *Dkt. No.* 39.

## IV.   **STATEMENT OF FACTS**

The facts of this case are taken from Plaintiff's accompanying statement pursuant to Local Rule 56-1 (the "*SUF*"), unless otherwise indicated.

Plaintiff is a photojournalist by trade.  *SUF* at ¶ 1.  Plaintiff's primary focus is authoring photographs of celebrities, models, and other persons with whom the public-at-large is interested.  *Id.* at ¶ 2.  Plaintiff thereafter licenses his photographs to online and print news and tabloid publications.  *Id.* at ¶ 3.  Since the public fascination with celebrities and celebrity culture is constantly changing—often a "flavor of the month" relationship—it is incumbent upon Plaintiff to renew, refresh and update his portfolio of work.  *Id.* at ¶ 4.

Plaintiff's livelihood depends in large part on his ability to not only consistently author new works and content, but to control the licensing, distribution and display of his photographs.  *Id.* at ¶ 5.  Plaintiff has invested significant time and money in building his portfolio of photographs, as it is quite time consuming and expensive to find out where any given celebrity or public figure may be at any given time.  *Id.* at ¶ 6.  Many of Plaintiff's photographs are taken on the street, or in other public places, as such locations provide him with the greatest ability to capture a photograph or series of photographs, which Plaintiff then edits prior to offering the photographs for license.  *Id.* at ¶ 7.  Plaintiff is aware of the fact that the media outlets to whom he licenses his photographs will often use his works in connection with articles about fashion, a celebrity's lifestyle, latest romances or other endeavors, as a photojournalist and, as such, authors his photographs with that in mind.  *Id.* at ¶ 8.

Relevant to this case, on February 7, 2020, Plaintiff authored a photograph of model Irina Shayk, taken while she was crossing a street in New York City (the "*Photograph*").  *Id.* at ¶ 9.  In taking the Photograph, Plaintiff chose the angle at which to photograph her; Plaintiff waited until he had the appropriate background;

and chose to feature Ms. Shayk prominently in the picture, without other individuals in her immediate proximity. *Id.* at ¶ 12. Plaintiff chose to take the Photograph at a time when there were no extraneous materials cluttering the image. *Id.* at ¶ 13. In addition to the framing of the image, Plaintiff chose the lens, focal length, shutter speed, I.S.O., lighting and F-stop to use, to capture the image in a manner so as to reflect his own artistic expression of that exact moment in time. *Id.* at ¶ 14.

Plaintiff applied to register the Photograph with the United States Copyright Office (the "*USCO*"), among others, on or about March 30, 2020, under Application No. 1-8687856921. *Id.* at ¶ 10. On May 5, 2020, the Photograph was registered under Registration No. VA 2-201-931 (with an effective date of March 30, 2022). *Id.* at ¶ 11. At the time Plaintiff took the Photograph of Ms. Shayk, she was wearing a pair of pants which are claimed to have been manufactured and/or sold by Defendant. *Id.* at ¶ 15. At the time Plaintiff took the Photograph, Ms. Shayk was also wearing black, high-cut shoes, what appears to be a black down jacket, a black baseball cap and black sunglasses. *Declaration of Carlos Vila* at ¶ 14. At the time Plaintiff authored the Photograph, he did not pay attention to any of Ms. Shayk's specific attire. *Id.* at ¶ 15. Instead, Plaintiff's primary purpose was to capture Ms. Shayk at a moment when she was looking in his direction and would best portray her for use in any given article by Plaintiff's regular licensees. *Id.* Plaintiff licensed the Photograph to the Daily Mail, among others who, as expected, used the Photograph in a news article to discuss Ms. Shayk's (then) most recent public appearance. *SUF* at ¶ 16.

Defendant is a California Corporation with a principal place of business at 9100 Wilshire Blvd, Beverly Hills in Los Angeles County, California. *Id.* at ¶ 17. Jesse Jo Stark is the president of Defendant and maintains an account on Instagram (the "*Account*") which is associated with Defendant. *Id.* at ¶¶ 18-19. Defendant is

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

the owner and operator of the Account and controls the Account. *Id.* at ¶¶ 20-23. Defendant's ownership and operation of the Account is a part of a commercial venture. *Id.* at ¶ 24.

On or about February 10, 2020, Plaintiff observed his Photograph on the Account in a social media story and post-dated February 8, 2020. *Id.* at ¶ 25. The Photograph was displayed at URL: https://www.instagram.com/p/B8UfsINnDaH/. *Id.* at ¶ 26. Defendant, through its president, Jesse Jo Stark, posted the Photograph to the Account. *Id.* at ¶ 27. Defendant did not alter the Photograph in any way, prior to posting it to the Account. *Id.* at ¶ 28. Plaintiff did not grant Defendant a license or other permission to use the Photograph or to post the Photograph to the Account. *Id.* at ¶ 30.

Defendant appended the Photograph with the words "goddess ♥ in skele merch, restock soon." *Id.* at ¶ 29. Upon information and belief, the words appended to the Photograph by Defendant are intended to advertise Defendant's products (here, a pair of pants) and to promote its sales by highlighting the fact that a world-famous model (Ms. Shayk) was seen in public wearing Defendant's "merch."

Upon information and belief, Defendant stole Plaintiff's Photograph for the sole purpose of trying to show that its items of clothing are popular with celebrities and used the Photograph for the purpose of increasing its sales. *Id.* at ¶ 31. Defendant's use of the Photograph is the type of use for which Plaintiff would have required a license. *Id.* at ¶ 32. Upon information and belief, Defendant profited from its theft of Plaintiff's Photograph, or, at least sought to do so. *Declaration of Carlos Vila* at ¶ 28. A photoshoot of a A-list celebrity wearing merchandise is extremely expensive to organize and contract for, insofar as celebrities regularly expect to be compensated in their own right for product endorsements. *Id.* at ¶ 32. Had Defendant sought a license from Plaintiff prior to appropriating the

1  Photograph for itself, Plaintiff would have sought a license fee in the amount of
2  $10,000. *SUF* at ¶ 33.

3      Defendant claims that Ms. Shayk is a co-author of the Photograph and
4  granted it permission to use the Photograph, however, Defendant is not in
5  possession of any documents evincing any licensing agreement involving the
6  Photograph from Plaintiff or any other person. *Id.* at ¶ 36. The Certificate of
7  Registration of the Photograph identifies Plaintiff as the sole author thereof. *Id.* at
8  ¶ 35. Further, it should be readily apparent that Ms. Shayk could not be the co-
9  author of the Photograph in that she is the subject of the Photograph (i.e. she was
10 in front of and not holding or behind the camera).

11     **V.     ARGUMENT**

12     Plaintiff is entitled to summary judgment on his claim for direct copyright
13 infringement insofar as the undisputed facts show that: (i) Plaintiff is the sole author
14 of the Photograph; (ii) Defendant copied, stored and displayed the Photograph on
15 its Instagram Account; and (iii) that Defendant did not have a license or other
16 permission from Plaintiff to display the Photograph.

17     Plaintiff is similarly entitled to summary judgment with respect to
18 Defendant's counterclaims for a variety of reasons, including, primarily, that the
19 Photograph is not a derivative work as a matter of law. See 17 U.S.C. § 113(c).
20 Nor does the Photograph infringe on any copyright purportedly owed by
21 Defendant. That is because the Copyright Act includes a specific carve-out which
22 holds that the making, distribution or display of a photograph depicting a "useful
23 article"—such as Defendant's pants—is not an infringement of copyright when
24 such photograph is used in connection with advertisements, commentaries or news
25 reports. *Id*

26

27

28

For all these reasons, as well as those set forth herein, it is respectfully submitted that Plaintiff's motion for summary judgment should be granted in its entirety.

### A. STANDARD OF REVIEW

As Your Honor has held, a Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Zorikova v. Kineticflix, LLC*, No. 219CV04214ODWGJSX, 2022 WL 1266662, at *2 (C.D. Cal. Apr. 28, 2022) (citing Fed. R. Civ. P. 56(a)). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, and the moving party may meet this burden with arguments or evidence or both. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

To this end, it is well-settled that once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). To satisfy this burden, the non-moving party must show that there are "genuine factual issues that ... may reasonably be resolved in favor of either party." *Id.* In this regard, "uncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory" or "speculative" testimony is likewise "insufficient to raise genuine issues of fact and defeat summary judgment."  *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal. 2004).  Stated otherwise, the nonmoving party must provide more than a "scintilla" of contradictory evidence to avoid summary judgment. *Anderson*, 477 U.S. at 251–52; *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000).

## B. Plaintiff has Established a *Prima Facie* Claim for Direct Copyright Infringement

As the Court is aware, to establish a *prima facie* case of direct copyright infringement, a plaintiff "must show ownership of the allegedly infringed material" and "demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect10, Inc. v. Giganews, Inc*., 847 F.3d 657, 666 (9th Cir. 2017), quoting *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001).

As to the first point, Plaintiff has shown ownership of the Photograph, insofar as Plaintiff has proffered a valid certificate of registration for the Photograph.  This satisfies Plaintiff's *prima facie* burden of proof.  *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  That is because under 17 U.S.C. § 401(c), a certificate of registration establishes a rebuttable presumption of ownership, originality, and validity in the Photograph. *S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989).

Here, Defendant has not rebutted the presumption that the Photograph is a copyrightable "original work[ ] of authorship fixed in [a] tangible medium of expression." 17 U.S.C. § 102(a); *see also Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1177 (9th Cir. 2012) ("[p]hotos are generally viewed as creative,

aesthetic expressions of a scene or image and have long been the subject of copyright."); *Ellis v. Infinite Labs, LLC*, No. SACV13241JLSANX, 2014 WL 12558115, at *3 (C.D. Cal. Aug. 1, 2014). Instead, Defendant argues only that the Photograph is purportedly a derivative work, insofar as Ms. Shayk is wearing a pair of pants which feature Defendant's "Pin-Up Girl" image, in which Defendant purports to hold a copyright. Insofar as this argument is addressed more fully in Point C.1.iii.2, *infra,* Plaintiff incorporates that argument by reference, rather than by repetition.

As to the second point, whether Defendant violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106, a claim for direct infringement requires a copyright plaintiff to show only "causation" (also referred to as the "volitional conduct requirement") by the defendant. *VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 731 (9th Cir. 2019). Under Ninth Circuit precedent, "the word 'volition' requirement in this context does not mean an 'act of willing or choosing' or an "act of deciding…" *Id*. (citing *Giganews, Inc*., 847 F.3d at 666). Instead, it "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *Id*. (citations omitted). *Id.* and *id.*

Stated otherwise, a copyright plaintiff need not demonstrate the accused infringer's intent to infringe the copyright to establish infringement … but it must establish that the defendant "actively engage[s]" in the copying." *Fox Broad. Co. Inc. v. Dish Network, L.C.C*., 905 F. Supp. 2d 1088, 1099 (C.D. Cal. 2012), aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C*., 723 F.3d 1067 (9th Cir. 2013), and aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C*., 747 F.3d 1060 (9th Cir. 2014) (quoting *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc*., 446 F.Supp.2d 1164, 1172 (E.D.Cal. 2006) and *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 213 F.Supp.2d 1146, 1168 (C.D.Cal. 2002)).

Here, Defendant's discovery responses serve to establish that Defendant actually engaged in the copying of Plaintiff's Photograph and that Defendant did not have a license or other permission from Plaintiff to copy, save and publicly display same.

On these facts, it is clear that Plaintiff is entitled to summary judgment on his claim for direct copyright infringement because Plaintiff need not show that Defendant intended to infringe copyright. Instead, Plaintiff must simply show that Defendant "actively engaged in the copying." Because Defendant has admitted to these facts, Plaintiff has established a claim for direct copyright infringement as a matter of law.

### C. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT'S COUNTERCLAIMS

Plaintiff is similarly entitled to summary judgment with respect to Defendant's counterclaims for a variety of reasons. Among them are that: (i) Defendant can claim no right of infringement because (a) the pants to which Defendant's "Pin-Up Doll" image was affixed is a "useful article" that was offered for sale or other distribution to the public and, as such (b) the making, distribution, or display of pictures or photographs of such article in connection with advertisements, commentaries or news reports would not be an infringement of copyright (see 17 U.S.C. § 113(c)); alternatively (ii) the Photograph is not a derivative work; and (iii) even if the Photograph were a derivative work, which it is not, Plaintiff's Photograph would be protected by the fair use doctrine.

### 1. Plaintiff's Photograph is Protected by 17 USC §113

It is axiomatic that Defendant's pants, upon which the "Pin-Up Doll" is affixed, are useful articles that have been offered for sale or other distribution to the public. This is significant because, pursuant to 17 U.S.C. § 113, copyright does not include any right to prevent the making, distribution, or display of pictures or

photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports." *Signorelli v. N. Coast Brewing Co. Inc.*, No. 5:18-CV-02914-EJD, 2019 WL 2569582, at *4 (N.D. Cal. June 21, 2019).  Stated otherwise, pursuant to 17 U.S.C. §113(c), Defendant cannot claim copyright to a photograph made of its useful article (pants), notwithstanding that the pants feature the Pin-Up Doll image, in which Defendant purports to have a copyright.

"A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'" *Id.* (quoting 17 U.S.C. § 101). Applying this definition, North Coast Brewing's beer bottles were held to be "useful articles." *Id.* (citing *Ets-Hokin,* 225 F.3d at 1080) (alcohol beverage bottle recognized to be a "useful article"). Likewise, the labels, themselves on the beer bottles were held to be useful articles because they are "normally a part of" North Coast Brewing's beer bottles. 17 U.S.C. § 101; *see also Major v. Sony Music Entertainment, Inc.*, No. 92-2826 PKL, 1992 WL 210115, at * 3 (S.D.N.Y. August 17, 1992) (finding video package cover is a "useful article").

Here, Plaintiff created the Photograph for purposes of seeking to license same to gossip and similar media outlets (whether in print or online), which are engaged in the business of reporting news concerning celebrities and other persons of public fascination.  As a result, even if this Court were to find that Defendant has a valid copyright in its "Pin-Up Girl" image, that Defendant affixed such image to a "useful article" (pants) and offered them for sale to the public statutorily prohibits any claim by Defendant that a photograph of the "useful article" (pants) is a derivative work or that Defendant otherwise has any other protectible copyright interest in the photograph.

## 2. **Plaintiff's Photograph is not a Derivative Work**

Even if 17 U.S.C. §113 was not dispositive as to this issue, which it is, the gravamen of Defendant's counterclaim rests on the contention that Plaintiff's Photograph is purportedly an unauthorized derivative work, because Ms. Shayk was wearing a pair of pants which featured Defendant's "Pin-up Doll" image, at the time Plaintiff photographed her.

Defendant's argument is fanciful, to the extent that "[a] 'derivative work' is defined in the Copyright Act as a work 'based upon one or more preexisting works' that 'recast[s], transform[s], or adapt[s]' a preexisting work and 'consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship'." *ABS Ent., Inc. v. CBS Corp*., 908 F.3d 405, 414 (9th Cir. 2018) (quoting 17 U.S.C. § 101).

As Plaintiff previously submitted, the Ninth Circuit cautioned against applying the rules pertaining to derivative works too narrowly with respect to photographs. That is because "[i]n a colloquial sense, of course, a photograph is [invariably] derived from the object that is its subject matter." *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1078 (9th Cir. 2000) (alteration added). Continuing, the Court noted that "one teacher of photography wrote of a photo as being an image "derived from ... the object pictured." *Id*.[1] Critically, however, the Court noted that "simply because photographs are in this colloquial sense 'derived' from their subject matter, it does not necessarily follow that they are derivative works under copyright law." *Id*.

The import of the Ninth Circuit's discussion and observations in this regard cannot be understated. That is because any photograph will almost invariably result in an image which features one or more products or items to which others own a

---

[1]     Quoting <u>Henry Holmes Smith</u>, *Photography In Our Time*, in KALAMAZOO ART CTR., THREE PHOTOGRAPHERS (catalog of exhibition) (Feb. 1961), reprinted in PHOTOGRAPHERS ON PHOTOGRAPHY, at 99, 102.

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

copyright; whether it is an item of clothing, other artwork, or any other material capable of an attaining copyright protection. If Defendant's argument were to be accepted, it would necessarily result in a determination that a photographer could not register, protect or sell any images without first obtaining permission from any and all rightsholders who have any portion of an image featured in a photograph. This would invite an overly restrictive and an unworkable result.

In this case, the Court should find that the Photograph is not a derivative work, insofar as it is not "based on" a pre-existing work. While Defendant's "Pinup Doll" image is partially observable on one portion of one leg of the pants Ms. Shayk is wearing, it is completely incidental to the Photograph. Indeed, the Photograph is intended to feature a world-renowned model walking in a public street. Ms. Shayk's choice of clothing has no bearing on the public's fascination with celebrity culture.

In this regard, the analysis in *Ets-Hokin* is directly on point, and serves to show why Plaintiff is entitled to summary judgment with respect to Defendant's counterclaims. In *Ets-Hokin*, Skyy Spirits ("*Skyy*") hired a professional photographer (Ets-Hokin) to create "product shots," of the Skyy vodka bottle. Ets-Hokin created the desired product shots and registered them for copyright protection. Skyy later claimed that Ets-Hokin's photographs were unsatisfactory and sought to hire other photographers to create its desired product shots. When those efforts failed, Skyy wound up using Ets-Hokin's photographs in promotional advertisements. When Ets-Hokin discovered Skyy's use of his photographs, he sued for copyright infringement.

Skyy objected to Ets-Hokin's claims, as Defendant does here, by contenting that Ets–Hokin's photographs were derivative works and, therefore, not subject to copyright protection. While the District Court agreed with Skyy, the Ninth Circuit did not. More specifically, while the Ninth Circuit recognized that "a derivative work must be based on a preexisting work that is copyrightable," it nonetheless

held that "the Skyy vodka bottle is a utilitarian object that is not protected by copyright." *Ets-Hokin*, 226 F.3d. at 1078. As a result, the Ninth Circuit held that "because Ets–Hokin's product shots are based on the bottle as a whole, not on the label … and [b]ecause Ets–Hokin's product shots are shots of the bottle as a whole- a useful article not subject to copyright protection-and not shots merely, or even mainly, of its label, we hold that the bottle does not qualify as a "preexisting work" within the meaning of the Copyright Act. As such, the photos Ets–Hokin took of the bottle cannot be derivative works." *Id.* at 1081.

Here, similarly to *Ets-Hokin*, Plaintiff's Photograph was intended to feature Ms. Shayk, not Defendant's pants. Even if Plaintiff had intended to feature Defendant's pants in the Photograph—which he did not—because Defendant affixed its "Pin-Up Girl" image to its pants, a useful article, the pants are not subject to copyright protection. Therefore, Plaintiff's Photograph cannot be a derivative work.

Although the Court rejected a similar argument advanced by Plaintiff in connection with his motion for judgment on the pleadings, the Court did so upon finding that "[t]he standard for determining whether a work is derivative of another is the same as that for determining whether that work is infringing the other." *Dkt. No. 39* at p. 5 (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)). To this end, the Court found that such argument presented a question of fact that would be inappropriate for resolution on a motion for judgment on the pleadings, because it would "still require[] the Court to determine whether the Photograph recasts, transforms, or adapts the Artwork." *Dkt. No. 39* at p. 5.

Here, there is no such impediment, insofar as the Court may resolve alleged disputes of fact in the context of a motion for summary judgment where, as here, there is no evidence in the record to support the position taken by the non-movant.

### 3.  Plaintiff's Photograph is Protected by the Fair Use Doctrine

Plaintiff asked this Court to find that Defendant's counterclaims should be dismissed as a matter of law when he filed his motion for judgment on the pleadings.  The Court declined Plaintiff's invitation for reasons similar to those stated above, *to wit,* that "fair use is a mixed question of law and fact that is not generally resolvable by motions to dismiss or for judgment on the pleadings." *Dkt. No.* 39 at p. 7 (citations omitted).  As with the above, the Court may properly consider this argument in the context of the instant motion for summary judgment.

In determining whether a use is fair, the following, non-exhaustive, list of factors, set forth in 17 U.S.C. § 107, are to be considered: (1) The purpose and character of the use; (2) The nature of the copyrighted work; (3) The amount and substantiality of the work used; and (4) The effect of the use on the copyright holder's potential market for the work. *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151-1152 (9th Cir. 2015); *Monge,* 688 F.3d at 1171. While no one factor is dispositive, the most weight will be given to the first and fourth factors. *Monge*, 688 F.3d at 1171.

#### i.  Purpose and character of use

The question here is whether Plaintiff transformed the Pin-Up girl in the creation of the Photograph by "add[ing] something new, with a further purpose or different character." See *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). Here, the answer to that simple question can be unequivocally answered in the affirmative be merely observing the subject works in a side-by-side comparison:

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

Deadly Doll Pin-Up Girl Image                    Plaintiff's Photograph

                    

        As the Court can readily see, Plaintiff's photograph has "added" innumerable elements, well-beyond the cartoon image in which Defendant claims a (spurious) right; including but not limited to: Russian model Irina Shayk, a public street, a taxi cab, buildings, etc… As such, the Photograph would clearly be transformative. As the *Monge* Court explained, "[t]ransformation is a judicially-created consideration that does not appear in the text of the statute." *Monge*, 688 F.3d at 1173. Although not appearing in the statute, the Supreme Court explained this test as follows:

> "The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely 'supercede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative'."

*Campbell* at 579. This factor clearly favors the Plaintiff and a finding of fair use.

## ii. **The Nature of the Copyrighted Work**

In determining whether the nature of the copyrighted work itself supports fair use, the Court must consider whether the work was creative. *Monge,* 688 F.3d at 1177. Photographs that document events are creative, because they are "aesthetic expressions" of a scene. *Monge,* 688 F.3d at 1177. As was noted above, that "Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." *GoPro, Inc. v. 360Heros, Inc*., 291 F. Supp. 3d 1060, 1071 (N.D. Cal. 2017), on reconsideration, No. 16-CV-01944-SI, 2018 WL 574930 (N.D. Cal. Jan. 26, 2018) (citing *Monge*, 688 F.3d at 1177; 17 U.S.C. § 102(a)(5)). As the Ninth Circuit has held, "[a]lthough the amount of creative input by the author required to meet the originality standard is low, it is not negligible." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). To meet this relatively simple threshold, "[t]here must be something more than a 'merely trivial' variation, something recognizably the artist's own." *Id.* (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 489 (9th Cir. 2000)). Here, the Court should be able to readily conclude that the Photograph is recognizably Plaintiff's own.

In this case, the Photograph is of world-renowned model, Irina Shayk. Plaintiff chose the angle at which to photograph her. He waited until he had the appropriate background. He chose to feature Ms. Shayk prominently in the picture, without other individuals in her immediate proximity. He chose to take the photograph at a time when there were no extraneous materials cluttering the image. He also chose the lens, focal length, shutter speed, I.S.O., lighting and F-stop to use in order to capture the image in a manner so as to reflect his own artistic expression.

"When this articulation of the minimal threshold for copyright protection is combined with the minimal standard of originality required for photographic works, the result is that even the slightest artistic touch will meet the originality test for a photograph." *Ets-Hokin*, 225 F.3d at 1076. "In assessing the 'creative spark'

PLAINTIFF'S NOTICE OF MOTION, MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   of a photograph, we are reminded of Judge Learned Hand's comment that "no

2   photograph, however simple, can be unaffected by the personal influence of the

3   author." *Id.* citing *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932,

4   934 (S.D.N.Y.1921).

5          This approach, according to a leading treatise in the copyright area, "has

6   become the prevailing view," and as a result, "almost any[ ] photograph may claim

7   the necessary originality to support a copyright merely by virtue of the

8   photographers' [sic] personal choice of subject matter, angle of photograph,

9   lighting, and determination of the precise time when the photograph is to be taken."

10  *Id.* Accordingly, this factor also clearly favors the Plaintiff and a finding of fair

11  use.

12          ### iii. __Amount and substantiality of the portion used__

13          The Court must next consider the amount and substantiality of Plaintiff's use

14  of Defendant's image from both a quantitative and qualitative perspective. *See*

15  *Monge*, 688 F.3d at 1178. The quantitative inquiry considers the actual proportion

16  of the Pin-Up Girl image that Plaintiff used. *See Monge*, 688 F.3d at 1178. The

17  qualitative inquiry considers whether Plaintiff used the "heart" of the Pin-Up Girl

18  Image. *See Monge*, 688 F.3d at 1178. Here, while Plaintiff's Photograph arguably

19  encompasses some of the Pin-Up girl image, the Pin-Up girl constitutes only a tiny

20  fraction of the overall composition of the Photograph. Accordingly, this factor also

21  clearly favors the Plaintiff and a finding of fair use.

22          ### iv. __Effect on the potential market for copyright holder's work__

23          The final fair use factor is "the effect of the use upon the potential market

24  for or value of the copyrighted work." *Monge*, 688 F.3d at 1180, quoting 17 U.S.C.

25  § 107(4) (italics by Court). As the Supreme Court held in *Harper & Row*, "[t]his

26  last factor is undoubtedly the single most important element of fair use." *Harper &*

27  *Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 566 105 S.Ct. 2218, 85

28

L.Ed.2d 588 (1985) (footnote and citation omitted) (emphasis added). The fact that the focus is on the potential market for or value of the copyrighted work is critical to this inquiry, insofar as it shifts the Court's focus away from the myopic—whether this particular defendant's actions have diluted the market for this particular picture—to the broad, that is: "if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Monge*, 688 F.3d at 1180, quoting *Harper & Row*, 471 U.S. at 568; *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 627 (7th Cir. 2003) ("[t]here is no analytical difference between destroying the market for a copyrighted work by producing and selling cheap copies and destroying the subsequent years' market for a [work] ...").

In other words, the fourth fair use factor focuses on the question of usurpation. That is because "[c]opyright law serves to protect a copyright holder's ability to benefit from the market for his or her work, as well as from any markets that the copyright holder could reasonably be expected to enter." *BWP Media USA, Inc. v. Gossip Cop Media, Inc*., 196 F. Supp. 3d 395, 409 (S.D.N.Y. 2016) citing *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.,* 386 F.Supp.2d 324, 331 (S.D.N.Y. 2005). "Thus, when assessing the fourth fair use factor, courts ask whether a defendant's use usurps the market for the copyright holder's work." *Id.* citing *Campbell*, 510 U.S. at 593, 114 S.Ct. 1164.

With this in mind, it is clear that the fourth fair use factor strongly favors Plaintiff. Here, there is literally no potentially cognizable impact on the market for the Pin-Up Girl image. That is because the photograph of a model wearing a pair of Defendant's pants does not usurp the market for Defendant selling a pair of pants. If anything, the argument would be to the contrary. More specifically, the Photograph featuring a world-renowned model wearing Defendant's pants almost certainly would have a positive impact on Defendant's sales of its clothing. That is

1  precisely why Defendant elected to post the Photograph to its Instagram Account.

2  The Photograph does not usurp Defendant's market for its clothing or any possible

3  derivative usage of the Pin-Up Girl Image. There is literally no credible argument

4  that can be offered to the contrary. As such this factor, as with all of the factors,

5  favors the Plaintiff and a finding of fair-use.

6

7                                **CONCLUSION**

8          For all the reasons set forth above, the Court should find that there are no

9  circumstances upon which Defendant could prevail on the Counterclaim.  In light

10 of the foregoing, cause exists to grant the instant motion in its entirety, together

11 with any such other and further relief as this Court deems just, equitable, and

12 proper.

13

14 DATED:      October 3, 2022

15

16                              **SANDERS LAW GROUP**

17                              By:  */s/ Craig B. Sanders*
                                Craig B. Sanders, Esq. (Cal Bar 284397)
18                              333 Earle Ovington Blvd., Suite 402
                                Uniondale, NY  11553
19                              Telephone: (516) 203-7600
                                Facsimile: (516) 282-7878
20

21                              *Attorneys for Plaintiff and Counterclaim*
22                              *Defendant, Carlos Vila*

23

24

25

26

27

28