O

# United States District Court
# Central District of California

| | |
|---|---|
| CARLOS VILA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEADLY DOLL, INC.,<br><br>　　　　　Defendant,<br><br>DEADLY DOLL, INC.,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>CARLOS VILA,<br><br>　　　　　Counter-Defendant. | Case № 2:21-cv-05837-ODW (MRWx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [46]** |

## I.   INTRODUCTION

On July 20, 2021, Plaintiff and Counter-Defendant Carlos Vila brought this copyright infringement action against Defendant and Counterclaimant Deadly Doll, Inc. (Compl., ECF No. 1.)  On September 3, 2021, Deadly Doll counterclaimed against Vila. (*See* Countercl., ECF No. 15.)  Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Vila now moves for partial summary judgment as to liability

on his claim for direct copyright infringement and for summary judgment as to Deadly Doll's counterclaims. (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 46.) For the reasons that follow, the Court **GRANTS** the Motion.[1]

## II. BACKGROUND

As it must on a motion for summary judgment, the Court sets forth the facts and draws all reasonable inferences from those facts in the light most favorable to Deadly Doll, the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Deadly Doll is a clothing manufacturer that incorporates artwork, song lyrics, and other graphics into its clothing. (Countercl. ¶ 6.) Deadly Doll owns the copyright in an image of a cartoon-style "Pin-Up" girl ("Artwork"). (Def.'s Statement Genuine Disput… …alist. (Pl.'s Statement Undisp… …y 7, 2020, Vila took a photog… …Photograph"). (SUF 9.) In the … …oll pants that feature the Artwo… …ph are included below: …aph:




(Mot. 16.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

On February 10, 2020, Vila observed the Photograph on Deadly Doll's Instagram account, which Deadly Doll posted without Vila's permission. (SUF 19–27, 30.)

On March 30, 2020, Vila applied to register the Photograph with the United States Copyright Office ("USCO"). (SUF 10.) In Vila's application to register the Photograph, Vila did not indicate that the Photograph was derived from or included the underlying Artwork. (SGD 48.) On May 5, 2020, Vila received the copyright registration for the Photograph. (SUF 11.) Vila licensed the Photograph to the Daily Mail, which published the Photograph in an article. (SUF 16.)

On July 20, 2021, Vila initiated this action against Deadly Doll, alleging a single claim for infringement of Vila's copyright in the Photograph. (Compl.)

On August 26, 2021, Deadly Doll applied to register the Artwork with the USCO. (SUF 36.) Deadly Doll subsequently received the copyright registration for the Artwork. (SGD 38.)

On September 3, 2021, Deadly Doll counterclaimed, alleging that Vila infringed Deadly Doll's copyright in the Artwork and seeking damages and a judicial declaration clarifying the parties' rights and obligations in relation to the Artwork and the Photograph. (*See* Countercl. ¶¶ 12–19.) Vila filed a motion for judgment on the pleadings against Deadly Doll's counterclaims, which the Court denied. (Order Den. Mot. J. Pleadings, ECF No. 39.) Vila now moves for partial summary judgment as to liability on his sole claim for copyright infringement against Deadly Doll and for summary judgment on Deadly Doll's counterclaims. (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 49; Reply, ECF No. 51.)

### III. EVIDENTIARY MATTERS

Pursuant to Rule 37(c)(1), Deadly Doll objects to Vila's evidence that he licensed the Photograph on the basis that he did not disclose this evidence in discovery. (SGD 16.) Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."

At the outset, the Court notes that Deadly Doll fails to comply with the Court's Order regarding the presentation of evidentiary objections. The Court requires "[e]videntiary objections [to] be addressed in a separate memorandum to be filed with the opposition or reply brief of the party." (*See* Scheduling & Case Management Order 8, ECF No. 25.) Here, Deadly Doll simply included its objections in its Statement of Genuine Disputes. (SGD 16.) This provides a sufficient basis for the Court to disregard Deadly Doll's objections.

Additionally, Deadly Doll's objection to Vila's evidence that he licensed the Photograph fails on its merits. Deadly Doll served an interrogatory that asked Vila to "identify all persons to whom [Vila] licensed the [Photograph]." (Decl. Mark S. Lee ISO Opp'n ("Lee Decl.") Ex. 2 ("Pl.'s Resps. Def.'s Interrogs."), ECF No. 49-3 (capitalization omitted).) Vila objected to the interrogatory, in part because it required the production of sensitive information and the parties had not entered into a protective order. (*Id.*) However, Vila agreed to "respond [to the interrogatory] upon the entry of a [p]rotective [o]rder." (*Id.*) The parties never entered into a protective order. (*See* Reply 6.)

Vila argues that Deadly Doll never sought to enter a protective order and that any failure to identify the persons to whom he licensed the Photograph is justified or harmless. (*Id.* at 6–7.) Based on Vila's agreement to respond to the interrogatory upon the entry of a protective order and the fact that the parties never entered a protective order, the Court finds Vila's failure to provide any licensing information to be justified. Deadly Doll could have made efforts to enter into a protective order to obtain the information it sought from Vila in discovery, but Deadly Doll does not argue it made any such effort.

In light of Deadly Doll's apparent failure to pursue entry of a protective order and Deadly Doll's failure to comply with the Court's requirements regarding the

presentation of evidentiary objections, the Court **OVERRULES** Deadly Doll's objection.

### IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*,

475 U.S. at 586–87). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## V. DISCUSSION

Vila argues that he is entitled to partial summary judgment as to liability on his claim for direct copyright infringement because he is the sole author of the Photograph, which Deadly Doll posted on Instagram without his permission. (Mot. 6, 8–10.) Vila further argues that he is entitled to summary judgment on Deadly Doll's counterclaims because, among other reasons, the Photograph is not a derivative work as a matter of law. (*Id.* at 6, 12–15.)

"Because a valid copyright is a precondition for a copyright owner to bring an infringement action in court, the validity of a copyright registration is a pivotal threshold question that a court must resolve before reaching any other issues." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022).

### A. Validity of Vila's Copyright Registration

Under 17 U.S.C. § 410(c), "[a] certificate of registration made before or within five years of first publication is prima facie evidence of the validity of the copyright." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (citing 17 U.S.C. § 410(c)). However, "[t]he presumptive validity of the certificate may be rebutted and defeated on summary judgment." *Id.* at 1086.

Here, it is undisputed that Vila took the Photograph on February 7, 2020. (SUF 9.) On May 5, 2020, the USCO issued Vila a copyright registration for the Photograph. (SUF 10–11.) Moreover, in a declaration dated October 18, 2022, Vila states that he licensed the Photograph to the Daily Mail, who published the Photograph in an article. (SUF 16; Decl. Carlos Vila ISO Mot. ("Vila Decl.") ¶ 16, ECF No. 46-3.) Although Vila does not identify the date on which the Daily Mail published the Photograph, it necessarily occurred prior to the date Vila authored a

declaration about it—October 18, 2022. This is less than five years after May 5, 2020, the date the USCO issued the copyright registration for the Photograph. Thus, under 17 U.S.C. § 410(c), Vila establishes a rebuttable presumption of the validity of his copyright in the Photograph.

Deadly Doll challenges the validity of Vila's copyright registration by arguing Vila failed to identify the Photograph as a derivative work and to disclose the Artwork as a preexisting work in his copyright application. (Opp'n 11–13.)

"The effect of inaccurate information in a registration application on the validity of the registration is governed by the safe-harbor provision, which is codified at 17 U.S.C. § 411(b)(1)." *Unicolors*, 52 F.4th at 1064. "[A] party seeking to invalidate a copyright registration under § 411(b) must demonstrate that (1) the registrant submitted a registration application containing inaccuracies, (2) the registrant knew that the application failed to comply with the requisite legal requirements, and (3) the inaccuracies in question were material to the registration decision by the Register of Copyrights." *Id.* at 1067. If a court determines that a registrant had knowledge of an inaccuracy in their application, the court then makes "a statutorily mandated request to "the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register . . . to refuse registration." *Id.* at 1064.

1. *Derivative Work*

The Court first considers whether the Photograph is a derivative work. A derivative work is "a work based upon one or more preexisting works," which includes "any . . . form in which a [preexisting] work may be recast, transformed, or adapted." 17 U.S.C. § 101. Importantly here, "in order to qualify as a 'preexisting work,' the underlying work must be copyrightable." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078–80 (9th Cir. 2000).

In *Ets-Hokin*, the Ninth Circuit considered whether certain photographs of a vodka bottle were derivative works. In doing so, the Court held that the underlying

vodka bottle in the photographs was not copyrightable because it was a "useful article." *Id.* at 1080–82. A useful article is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Although useful articles themselves are not copyrightable, a feature incorporated into a useful article is eligible for copyright protection if it:

> (1) can be perceived as a two- or three-dimensional work of art separate from the useful article, and (2) would qualify as a protectable pictorial, graphic, or sculptural work, either on its own or fixed in some other tangible medium of expression, if it were imagined separately from the useful article into which it is incorporated.

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 409 (2017). Accordingly, the Ninth Circuit in *Ets-Hokin* recognized that, although the photographed vodka bottle was itself a useful article and therefore not copyrightable, the label on the bottle could potentially be copyrightable. *See* 225 F.3d at 1081. However, the court declined to decide whether the label on the vodka bottle was copyrightable, reasoning that the photographs at issue were not derivative works in the first place. *Id.* The court explained, "[b]ecause [the photographs were] shots of the bottle as a whole—a useful article not subject to copyright protection—and not shots merely, or even mainly, of its label, we hold that the bottle does not qualify as a 'preexisting work' within the meaning of the Copyright Act." *Id.* Under this framework, the court held "the photos . . . of the bottle cannot be derivative works." *Id.* (reversing district court's conclusion on summary judgment that photos of vodka bottle were derivative works).

Applying *Ets-Hokin* to the undisputed facts before the Court, the Court finds that the Photograph cannot be a derivative work. It is undisputed that the Photograph features a model while she is crossing the street and wearing a pair of Deadly Doll pants that incorporate the Artwork. (SUF 9, 15; SGD 47.) In addition, the pants are a "useful article." *See Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1224

(C.D. Cal. 2006) ("As a general rule, items of clothing are not entitled to copyright protection. This is because items of clothing are generally considered useful articles . . . ." (citations omitted)). Like the photograph of the vodka bottle in *Ets-Hokin*, the Photograph here features the pants "as a whole" and does not "merely, or even mainly" feature the Artwork. *See* 225 F.3d at 1081. Indeed, the Photograph mainly features a model crossing the street. (*See* SUF 9.) Accordingly, the Court concludes that the pants do "not qualify as a 'preexisting work' within the meaning of the Copyright Act," and that the Photograph cannot be a derivative work. *See Ets-Hokin*, 225 F.3d at 1081.

The fact that Deadly Doll has a copyright in the Artwork featured on the pants, (*see* SGD 37–38), does not change this conclusion. The court in *Ets-Hokin* held that, even if the label on the vodka bottle was copyrightable, the photograph of the bottle could not be a derivative work. *See* 225 F.3d at 1081. The same is true here: even if the Artwork on the pants is copyrighted, a photograph featuring the pants as a whole cannot be a derivative work. *Id.*

  *2. Failure to Disclose*

The Court next considers whether the copyright registration for the Photograph is invalid because Vila failed to identify the Photograph as a derivative work and to disclose the Artwork as a preexisting work in his copyright application. (Opp'n 11–13.)

As described above, Deadly Doll contends Vila's copyright application was factually inaccurate because Vila failed to identify the Photograph as a derivative work and to disclose the Artwork as a preexisting work. (Opp'n 11–13.) In sum, Vila argues that this information was required under "Space 6" of the "Form VA Copyright Application." (*Id.* at 11.) The instructions for Space 6, titled "Derivative Work or Compilation," require a registrant to identify "the preexisting work that has been recast, transformed, or adapted." U.S. Copyright Office, Form VA Copyright Application (2022), https://www.copyright.gov/forms/formva.pdf. However, a

registrant is required to fill out this section of the application only if the work at issue is a "'changed version,' 'compilation,' or 'derivative work,' and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain." *Id.* Here, as explained above, the Court finds that the Photograph features the Deadly Doll pants as a whole, which do not qualify as a preexisting work, and that Vila's Photograph is not a derivative work as a matter of law. (*See supra* Part V.A.1.) The parties do not contend that the Photograph constitutes a "changed version" or "compilation." Thus, Vila was not required to fill out "Space 6" in his application, and he did not supply the USCO with factually inaccurate information by failing to do so.

Accordingly, Deadly Doll fails to demonstrate that Vila submitted a registration application containing an inaccuracy and that Vila's copyright registration is invalid. *See Unicolors*, 52 F.4th at 1067. Thus, the validity of Vila's copyright is not a bar to his infringement action against Deadly Doll. *See id.* at 1070.

**B.     Direct Copyright Infringement**

Vila argues he is entitled to partial summary judgment as to liability on his claim for direct copyright infringement. (Mot. 6.)

"To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). In the context of a direct copyright infringement claim, "the word volition . . . does not really mean an act of willing or choosing or an act of deciding;" rather, "it simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *Id.* (internal quotation marks omitted).

### 1. Ownership

As discussed above, Vila demonstrates a valid copyright registration, and Deadly Doll fails to point to any genuine factual dispute that might disturb Vila's showing. (*See supra* Part V.A.) Accordingly, Vila establishes ownership of the copyright in the Photograph for the purpose of summary judgment. *See S.O.S.*, 886 F.2d at 1085.

### 2. Copying

"The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106." *Id.* at 1085 n.3. Those exclusive rights include the right "to display the copyrighted work publicly." 17 U.S.C. § 106(5).

Here, there is no material dispute that Deadly Doll copied Vila's Photograph. It is undisputed that "[Deadly Doll], through its president, . . . posted the Photograph to [Deadly Doll's Instagram account]" without Vila's permission. (SUF 18–23, 27, 30). It is also undisputed that "[Deadly Doll] did not alter the Photograph . . . prior to posting it to" Deadly Doll's Instagram account. (SUF 28.) Thus, Deadly Doll "display[ed] the copyrighted work publicly." 17 U.S.C. § 106(5). Moreover, Deadly Doll's conduct—selecting and posting the Photograph to its Instagram account—is undisputedly volitional. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021) (holding "one who 'exercised control' or 'selected any material for upload, download, transmission, or storage' has acted volitionally" (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019))). Accordingly, the Court finds that the undisputed evidence demonstrates that Deadly Doll engaged in volitional copying of the Photograph.

Deadly Doll's alternative arguments in opposition to Vila's direct infringement claim fail. Deadly Doll argues that, "to extent it applies in this action, [17 U.S.C.] § 113(c) bars Vila's copyright infringement claims against [Deadly Doll]." (Opp'n 14–15.) Under 17 U.S.C. § 113(c), a copyright holder of a work that is

reproduced on an article does not have "any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports." 17 U.S.C. § 113(c). Deadly Doll argues that this provision bars an infringement claim against it for posting the Photograph "on Instagram for public comment." (Opp'n 14–15.) This argument fails because Deadly Doll infringed Vila's copyright in the Photograph, which is not a copyright for a work reproduced on an article. Accordingly, 17 U.S.C. § 113(c) does not bar Vila's infringement claim.

In addition, in rebutting Vila's argument that the Photograph is protected by the fair use doctrine, Deadly Doll states that its own "use of Vila's image on Instagram was fair on the facts present" in this case. (Opp'n 18.) However, beyond that passing statement, Deadly Doll fails to provide any further argument that its own use of the Photograph is protected by the fair use doctrine. (*See generally id.*) Rather, Deadly Doll's analysis of the fair use doctrine is limited entirely to Vila's use of the Artwork in the Photograph. (*Id.* at 17–22.) The Court finds Deadly Doll's argument that posting the Photograph on Instagram was fair use to be underdeveloped and declines to address it. *See Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address "undeveloped argument . . . not supported by citations to the record, argument, or any legal authority").

For these reasons, Vila is entitled to summary judgment as to liability on his claim for direct copyright infringement.

**C.   Counterclaims**

Vila also argues that he is entitled to summary judgment on Deadly Doll's Counterclaim for copyright infringement and declaratory relief. (Mot. 10–20.)

*1.   Copyright Infringement*

Deadly Doll asserts a copyright infringement counterclaim against Vila, alleging that Vila's Photograph is an unauthorized derivative work of Deadly Doll's

copyrighted Artwork.  (Countercl. ¶¶ 15–19.)  This is the only theory of copyright infringement Deadly Doll alleges.  (*Id.*)  However, as discussed above, Vila's Photograph is not a derivative work as a matter of law.  (*See supra* Part V.A.1.)

Accordingly, Vila is entitled to summary judgment on Deadly Doll's copyright infringement counterclaim.

### 2. *Declaratory Relief*

Deadly Doll asserts a counterclaim for declaratory relief against Vila seeking "[a] judicial declaration of the parties' respective rights and obligations with regard to" the disputed matters at issue in this lawsuit.  (Countercl. ¶¶ 12–14; *see also* Opp'n 3 (stating Deadly Doll seeks "declaratory relief that Vila's alleged copyright in his unauthorized derivative work is invalid").)

"Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  Consistent with this principle, "[c]ourts may choose not to permit a claim for declaratory relief when resolution of other claims would sufficiently resolve the controversy." *SMSW Enters. LLC v. Halberd Corp.*, No. 2:13-cv-01412-BRO (SPx), 2014 WL 12588682, at *9 (C.D. Cal. May 30, 2014) (denying summary judgment on claim for declaratory relief where claim was "resolved by its other claims for relief and is therefore super superfluous and unnecessary").

Here, the parties' respective rights and obligations with regard to the disputed matters at issue in this lawsuit are fully addressed by the parties' substantive claims. Deadly Doll's declaratory relief counterclaim is thus superfluous, and the Court grants summary judgment as to this counterclaim.

///

///

///

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Vila's Motion for Partial Summary Judgment. (ECF No. 46.) The Court **GRANTS** (1) partial summary judgment in Vila's favor as to liability on his claim for direct copyright infringement, and (2) summary judgment in Vila's favor on Deadly Doll's counterclaims.

**IT IS SO ORDERED.**

March 27, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**